UNIVERSITY OF HAWAII PROFESSIONAL ASSEM-
BLY, Plaintiff-Appellant *v.* UNIVERSITY OF HAWAII,
STATE OF HAWAII, BOARD OF REGENTS AND
FUJIO MATSUDA, as President of the UNIVERSITY
OF HAWAII, Defendants-Appellees

NO. 7445

(CIVIL NO. 50744)

FEBRUARY 18, 1983

LUM, J., RETIRED JUSTICE MARUMOTO, IN PLACE OF
NAKAMURA, J., RECUSED, AND RETIRED JUSTICES
OGATA AND MENOR, ASSIGNED TEMPORARILY*

---

* Chief Justice Richardson, who heard oral argument in this case, retired from the court on December 30, 1982. HRS § 602-10 (1982 Supp.) provides: "After oral argument of a case, if a vacancy arises or if for any other reason a justice is unable to continue on the case, the case may be decided or disposed of upon the concurrence of any three members of the court without filling the vacancy or the place of such justice."

*Per Curiam.* University of Hawaii Professional Assembly (UHPA) brought this action to compel the University to arbitrate the denial of promotion to certain faculty members. The trial court refused to compel arbitration. We reverse.

## I.

In 1976, the University rejected the applications for promotion of many faculty members. Thirty-three of these faculty members filed grievances under the terms of a collective bargaining agreement reached by the parties extending from March 1975 to June 1977. The faculty members were unsatisfied with the University's response to their grievances, and they asked for submission of the dispute to an arbitrator. Most of the cases were eventually sent to arbitration, but the University refused to arbitrate the disputes of nine faculty members because it asserted that these people failed to meet the minimum qualifications for promotion. These qualifications are set by the University and described in the Faculty Handbook. In some cases the criteria allow for experience to be the equivalent of a degree.

The University contends that these disputes are not arbitrable because it alone has the power to set and interpret promotion criteria. This is based on its interpretation of HRS § 89-9(d)(7).[1] UHPA argues that although the University may set

---

[1] HRS § 89-9(d)(7) reads:
The employer and the exclusive representative shall not agree to any proposal which would be inconsistent with merit principles or the principle of equal pay for equal work pursuant to sections 76-1, 76-2, 77-31, and 77-33, or which would

criteria, it may not act in an arbitrary and capricious way in granting promotion. The facts, UHPA suggests, show that there is a possibility of arbitrary behavior. The promotion procedure involves seven levels of review of the applicant, beginning at the department and ending with the University President. The faculty members here had all been recommended for promotion by the levels within their departments, but were denied promotion by higher officials without a refutation of the previous recommendation.

## II.

This case presents a conflict between the collective bargaining agreement reached by UHPA and the University, and HRS § 89-9(d). The University contends that the difference between the two are irreconcilable, and that the statute prevails. UHPA contends that a reasonable interpretation of the statute will harmonize the discord and allow the agreement its full force.

## A.

The agreement sets out a grievance procedure for certain complaints by employees against the University. Art. VI, § G states:

> The Faculty Member will be notified of the University's decision in accordance with Articles IV [Tenure] and V [Promotion]. If he is dissatisfied with the decision, he may file a grievance at Step 2 of the Grievance Procedure (Arti-

---

interfere with the rights of a public employer to (1) direct employees; (2) determine qualification, standards for work, the nature and contents of examinations, hire, promote, transfer, assign, and retain employees in positions and suspend, demote, discharge, or take other disciplinary action against employees for proper cause; (3) relieve an employee from duties because of lack of work or other legitimate reason; (4) maintain efficiency of government operations; (5) determine methods, means, and personnel by which the employer's operations are to be conducted; and take such actions as may be necessary to carry out the missions of the employer in cases of emergencies.

cle XII) within twenty (20) days of the receipt of the decision.

Step 2 of the grievance procedure is a hearing with the Chancellor of the University. Step 3 allows appeal to the President of the University. The agreement then states that if the grievance has not been settled at Step 3, UHPA may request arbitration under Step 4. Step 4 discusses arbitrability in two places. First, it states: "No grievance may be arbitrated unless it involves an alleged violation of a specific term or provision of the Agreement." Later it states: "If the University disputes the arbitrability of any grievance, the Arbitrator shall first determine whether he has jurisdiction to act; and if he finds that he has no such power, the grievance shall be referred back to the parties without decision or recommendation on its merits."

Here the grievance involves a specific provision in the agreement since the faculty members complain about the application of criteria that the University is to establish in writing and apply per Art. V of the Agreement. UHPA claims that the University failed to apply the criteria for equivalency as set out in the Faculty Handbook.

Were there no statutes concerning collective bargaining in the public sector, such as § HRS 89-9(d), our decision would be simple. Where the agreement calls for the arbitrator to decide the issue of arbitrability, the court should compel arbitration. *United Merchants & Manufacturers v. American Text Co.,* 512 F.Supp. 757 (S.D.N.Y. 1981). For a court to decide the issue of whether a particular grievance arises under the agreement or not would be to take away completely the power that the parties agreed to give the arbitrator. The arbitration process may only be used when the grievance involves the violation of a provision of the agreement. Thus the questions of arbitrability and whether the agreement is involved are one and the same. The University would have the court decide arbitrability by casting the issue in a different light, that of what the agreement covers. We would thereby decide all disputes of arbitrability, which is the very issue the parties agreed to submit to the arbitrator. This issue, therefore, should be decided in arbitration. The arbitrator's decision will then be upheld unless there is fraud, corruption, procedural misbehavior or where the arbitrator exceeded his powers. *See* HRS § 658-9; *Kim v. Mel*

*Cummins Bldg. Contractor,* 57 Haw. 186, 552 P.2d 1117 (1976).

The University, however, contends that HRS § 89-9(d)(7) disallows arbitration in cases concerning promotion and tenure. Section 89-9(d)(7) prevents a public employer from entering into a contract that interferes with its right to promote or reclassify employees. The issue is how literally the court should apply this statute.

### B.

The University argues that the statute clearly prohibits it from delegating any of its power to grant promotion and tenure, and therefore, by law, the subject could not be part of the contract. If not part of the contract, then the subject is barred from arbitration.

We do not read § 89-9(d)(7) to give such sweeping power to the University so that all matters mentioned there are sacrosant and inviolable by collective bargaining. In addition to promotion, the statute prohibits interference with disciplinary action and means by which operations are conducted, which might encompass working conditions. To bar those subjects from negotiation completely would leave little for a collective bargaining agreement to cover.

We believe that there is a more reasonable way to interpret this statute. UHPA does not dispute, nor do we question, the power of the University to establish criteria. Once the criteria are established, however, the procedure of review must fairly follow the criteria. Otherwise, the criteria are meaningless and may become a facade for unfair or discriminatory practice.[2]

---

[2] Article II of the Agreement states:

A. Neither the University nor the Assembly shall discriminate against any Faculty Member on the basis of race, color, religion, national origin, or sex.

B. Neither the University nor the Assembly will discriminate against any Faculty Member on the basis of activity or lack of activity on behalf of the Assembly.

A review of the fairness of the procedure does not infringe upon the power to promote or grant tenure. The agreement limits the power of the arbitrator in that he is not to substitute his judgment for that of a University official unless he finds the University's decision to be arbitrary and capricious.[3] The arbitrator, therefore, must accept the criteria established by the University in every case, and follow the University's interpretation unless he finds the University itself has failed to apply its criteria.

We interpret § 89-9(d)(7) to allow for arbitration in these cases, also because we would require more direct language in a statute to allow it to take away the bargained-for remedy of arbitration. One purpose of arbitration is to quell unrest before it kindles a strike. Since strikes by public workers can be very disruptive and dangerous to the health of the state, calming tensions through arbitration is more imperative in the public sector than in the private sector. We agree with those courts which favor arbitration in the area of promotion and tenure of public employees in the field of education. *Blue Hills Regional District School Committee v. Flight,* ___ Mass. ___, 421 N.E.2d 755 (1981); *Ferndale Education Ass'n v. School District for Ferndale,* 67 Mich. App. 637, 242 N.W.2d 478 (1976); *In re Board of Education of the Armonk Central School District,* ___ App. Div. 2d ___, 454 N.Y.S.2d 85 (1982); *Central Point School District v. Employment Relations Board,* 27 Or. App. 285, 555 P.2d 1269 (1976); *North Beach Education Ass'n v. North Beach School District,* 31 Wash. App. 77, 639 P.2d 821 (1982).

---

[3] Art. XII, subsection b. states:

    b. In any grievance involving the employment status of a Faculty Member, the Arbitrator shall not substitute his judgment for that of the official making such judgment unless he determines that the decision of the official is arbitrary or capricious.

The trial court, therefore, erred in denying the motion to compel arbitration. We reverse and remand for further proceedings not inconsistent with this opinion.

*Thomas P. Gill* (*Gill, Park, Park & Kim* of counsel) (*Herbert R. Takahashi* and *Lowell K. Y. Chun-Hoon* on the briefs) for plaintiff-appellant.

*Cynthia Winegar* and *Edward Yuen,* Deputy Attorneys General, for defendants-appellees.