975 P.2d 766

**Margery S. BRONSTER, in her official capacity as Attorney General of Hawai'i, Plaintiff–Appellee,**

v.

**UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL–CIO, Defendant–Appellant.**

No. 21130.

Supreme Court of Hawai'i.

Jan. 21, 1999.

Herbert R. Takahashi and Rebecca L Covert (of Takahashi Masui & Vasconcellos), Honolulu, on the briefs, for defendant-appellant United Public Workers, AFSCME, Local 646, AFL–CIO.

Ruth I. Tsujimura and Douglas H. Inouye, deputy attorneys general, on the briefs, for plaintiff-appellee Margery S. Bronster.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

Opinion of the Court by LEVINSON, J.

The defendant-appellant United Public Workers, AFSCME, Local 646, AFL–CIO (the UPW) appeals from (1) the orders of the circuit court (a) granting the plaintiff-appellee Margery S. Bronster's motion for summary judgment, (b) denying the UPW's motions (i) to stay proceedings pending arbitration, (ii) to compel arbitration, and (iii) for summary judgment, and (2) the final judgment in favor of Bronster, in her official capacity as the state's attorney general. This case arises out of Bronster's prayer, *inter alia,* for a declaratory judgment that the Office of the Attorney General is not

subject to arbitration pursuant to a collective bargaining agreement (hereinafter, "the agreement") between the State of Hawai'i (the State) and the UPW covering "public employees in the institutional, health and correctional worker's unit, non-supervisory and supervisory," known as "Unit 10 employees," pursuant to Hawai'i Revised Statutes (HRS) § 89–6 (Supp.1998).[1] The circuit court concurred with Bronster and granted her declaratory relief.

On appeal, the UPW argues that the circuit court erred because (1) as a "representative" or agent of the State, the Attorney General was a "party" to the agreement, (2) the agreement expressly provides that the determination of the arbitrability of a dispute is to be decided by the arbitrator, and (3) the circuit court's rulings violated the presumption in favor of arbitrability. We agree with the UPW's first two points and, therefore, need not reach the third. Accordingly, we vacate the circuit court's orders and judgment and remand for the entry of orders granting the UPW's motions (1) for summary judgment and (2) to compel arbitration.

## I. *BACKGROUND*

### A. *The Agreement*

On June 21, 1994, the State and the UPW entered into the agreement, the effective dates of which were July 1, 1993 through June 30, 1995. The agreement was signed on behalf of the State, *inter alia*, by Governor John Waihee. The record contains several memoranda of agreement extending the termination date of the agreement, most recently, to June 30, 1996.

The preamble of the agreement recites:

THIS AGREEMENT is entered into this *21st* day of *June, 1994* by and between the **STATE OF HAWAII**, THE CITY AND COUNTY OF HONOLULU, THE COUNTY OF HAWAII, the COUNTY OF MAUI, and the COUNTY OF KAUAI, **hereinafter collectively called the EMPLOYER,** and the UNITED PUBLIC WORKERS, AMERICAN FEDERA-

TION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, LOCAL 646, AFL–CIO, hereinafter called the UNION.

(Underlined text in original and bold-face added as emphasis.) Subsection 1.05 provides in relevant part that "[t]he Employer agrees that it shall consult the Union when formulating and implementing personnel policies, practices and any matter affecting working conditions."

Section 15 of the agreement describes the procedure governing grievances. Subsection 15.01 provides in relevant part that "[i]t shall be the intention of the parties that any grievance which arises out of alleged violation, misinterpretation, or misapplication of the Agreement ... shall be resolved in accordance with provisions set forth herein." In general, section 15 creates a four-step process for addressing grievances that cannot be resolved informally.

"Step 1" requires the "grieving party" (1) to set out his or her complaint in writing on a form "provided by the Employer" and (2) to submit the form "to the Superintendent or Administrator of a corrections facility or his designee, or the division head or his designee in the case of a non-corrections facility[.]" If the grieving party is not satisfied after "Step 1," the party may, pursuant to "Step 2," "file a letter of appeal ... with the department head or his designee for settlement[.]" Should the grieving party remain unsatisfied, he or she may, pursuant to "Step 3," file a further "letter of appeal ... with the Employer or his representative[.]" Finally, "[i]f the matter is not satisfactorily settled at Step 3," the grieving party is authorized, pursuant to "Step 4," "to proceed with arbitration."

Subsection 15.26 provides that,

*[i]f the Employer disputes the arbitrability of any grievance under the terms of this Agreement, the Arbitrator shall first determine whether he has jurisdiction to act; and if he finds that he has no such power, the grievance shall be referred back to the parties without decision on its merits.*

---

1. HRS § 89–6 provides in relevant part: **"Appropriate bargaining units.** (a) All employees throughout the State within any of the following categories shall constitute an appropriate bargaining unit: ... (10) Institutional, health, and correctional workers[.]"

(Emphasis added.) Subsection 15.28 provides in relevant part that "[t]he award of the Arbitrator shall be accepted as final and binding."

Section 54 of the agreement governs "the Employer's" duties with respect to "Defense and Counsel." Subsection 54.01 states that "[t]he Employer shall provide legal counsel upon request to employees sued for actions taken by them in the course and scope of their employment and within the scope of their duties and responsibilities." The remainder of the section fleshes out the parameters of the Employer's duty.

### · B. *The Underlying Dispute*

In 1993 and 1994, a dispute arose between the State and the UPW over the interpretation of Section 54. During that period, seven adult correction officers (hereinafter, "ACOs") were sued in civil actions by former female inmates, each alleging sexual harassment and abuse. All seven ACOs requested legal assistance through the UPW, which, in turn, submitted the requests to the State of Hawai'i Department of Public Safety (the DPS) pursuant to subsection 54.01. When the DPS failed to respond to multiple requests, the ACOs filed grievances pursuant to the agreement. The grievances apparently proceeded through the requisite steps and were consolidated for arbitration. During the hearings before the arbitrator, the State evidently characterized the DPS's delay in responding to the UPW's requests as being necessary to conduct an investigation into (1) whether the ACOs had been acting "in the course of and scope of their employment," in order to determine whether the State was required to provide defense and counsel at all and (2) the need for disciplinary action against the ACOs, or any of them, in which case private counsel would have to be hired for the ACOs, by virtue of the conflict of interest in which the Department of the Attorney General would find itself.

In his "Decision and Award" issued on September 14, 1994, the arbitrator determined that the State had breached the agreement through its delay. The award provided in relevant part that,

[i]n view of the length of time and failure to act, which has prejudiced the grievants, the Department of Public Safety is directed to provide private legal counsel for all of the grievants in these matters except where a determination has been made not to provide legal representation by formal notification prior to the arbitration. The Department of Public Safety is not precluded from taking any disciplinary action if warranted against any of the grievants even if it authorizes private legal counsel on the civil matters. However, the DPS obligation to furnish legal counsel[,] once undertaken, cannot be rescinded if it is later determined that the grievant acted outside of the course and scope of employment beyond the scope of assigned duties and responsibilities. To permit a withdrawal would undermine the rights accorded to employees under Section 54.01 of the collective bargaining agreement.

Hereafter, when civil suits are filed against correction officers . . ., the Department of Public Safety must undertake its investigation and notify the Attorney General of the pending matter. The Attorney General should be directed to obtain an extension of time to the extent possible and the Department must complete its investigation in enough time to allow the correction officer to obtain his own counsel if it should decline to represent the officer. If it cannot complete a reasonable threshold investigation within the extensions obtained by the Attorney General[,] then it must provide legal assistance though private counsel for its correction officers.

. . . The arbitrator will retain limited jurisdiction for the purpose of enforcing the award.

The circuit court granted the UPW's motion to confirm the arbitration award on November 28, 1994.

Subsequent to the issuance of the arbitrator's award, the Department of the Attorney General apparently provided the grieving ACOs with a list of approved private attorneys from which they could select private representation in their civil suits. The UPW objected to the Attorney General's "unilateral" selection of counsel for the ACOs. The

UPW and the Department of the Attorney General exchanged correspondence regarding the issue, and representatives of the Department of the Attorney General and the UPW met to discuss the matter on at least one occasion.

The record indicates that, as a result of the foregoing communications, Deputy Attorney General Lester Goo, on January 13, 1995, proposed a draft memorandum of understanding (MOU) regarding the selection of counsel pursuant to section 54 of the agreement. The MOU provided in relevant part that "the State and the Union shall present an agreed-upon list of private attorneys to the affected employee." On January 25, 1995, the UPW responded with a letter requesting several changes to the MOU. According to a letter sent by the UPW on April 15, 1995, Goo failed to respond. The UPW demanded a response within two weeks of the date of its April 15 letter. Although the record is not clear, it appears that the Department of the Attorney General again failed to respond.

On May 12, 1995, the UPW's State Director, Gary Rodrigues, submitted a "Step 2" grievance form to "Margery Bronster[,] Attorney General," alleging a "continuous violation," beginning on May 1, 1995, of subsections 1.05 and 54.01 of the agreement. As its "remedy sought," the UPW demanded that Bronster "[p]rovide the Union with its mutual consent pursuant to Section 1.05 on the list of attorneys provided to employees pursuant to Section 54."

On May 26, 1995, Rodrigues submitted a "Step 3 Letter of Appeal" to James Takushi, Director of the State Department of Human Resources Development, alleging that "[n]o step 2 response was received" and that "[t]he remedies have not been granted." Takushi responded in a June 16, 1995 letter by "denying" the grievance on the bases that,

[i]n our review of this grievance, we do not find violations of Sections 1.05 and 54.01 of the BU 10 agreement. Further we believe that the filing of the Step 2 grievance with the Department of the Attorney General is not applicable as there are no BU 10 employees within the Department of the Attorney General.

Rodrigues then submitted a letter, dated July 3, 1995, "informing" Takushi "that the United Public Workers is submitting the . . . grievance to arbitration." On August 22, 1995, Bronster filed the present lawsuit. One day later, Deputy Attorney General Janice Kemp sent a letter, on behalf of herself, "as counsel for the State of Hawaii," and Herbert R. Takahashi, "counsel for UPW," to Walter H. Ikeda, asking him to serve as arbitrator. Kemp added the following caveat:

As a courtesy to you and Mr. Takahashi, we are informing you and he that this office has filed a related complaint with the First Circuit Court. We are requesting that the court declare the subject of the grievance non-arbitrable. We are hopeful that UPW will agree to stay the arbitration proceedings until the court action is determined. However, until Mr. Takahashi has had an opportunity to review the complaint, we will proceed as usual.

C. *Procedural History In The Circuit Court*

In her August 22, 1995 complaint in the present matter, Bronster prayed, *inter alia:*

1. That [the circuit court] declare that Attorney General Bronster is not a proper party to the subject grievance under the Unit 10 collective bargaining agreement;

2. That [the circuit court] further declare that the subject matter of the grievance is not a proper issue for arbitration under the Unit 10 collective bargaining agreement; [and]

3. That [the circuit court] enjoin the UPW from compelling arbitration on the subject grievance until final resolution of the instant complaint[.]

Due to alleged difficulties in personal service, the complaint was not served on the UPW until June 27, 1996.

On July 2, 1996, the UPW filed a motion to stay the proceedings pending arbitration, arguing, *inter alia,* that the question of arbitrability was for the arbitrator to determine pursuant to the agreement. On August 8, 1996, the circuit court filed an order denying the UPW's motion on the basis that, "within

the facts of this case, the issue of arbitrability is for the Court, not the arbitrator, to determine." On August 22, 1996, the UPW filed a notice of appeal of the circuit court's order. However, this court dismissed the appeal as premature, by an order filed on October 25, 1996.

On October 25, 1996, Bronster filed a motion for summary judgment, arguing (1) that the circuit court had already ruled that it had jurisdiction to decide the arbitrability of the issue and (2) that her department was not a party to the agreement and, therefore, could not be bound by it. The attachments to Bronster's motion included (1) an affidavit of Norma K. Geenty, Departmental Personnel Officer of the Department of the Attorney General, in which she averred that no "Unit 10" employees were employed by the department, (2) an authenticated copy of the agreement, and (3) and some of the correspondence between the UPW and her office. The UPW filed a memorandum in opposition to Bronster's motion on November 25, 1996, arguing, *inter alia*, that the issue of arbitrability was for the arbitrator and that there existed "genuine issues of material fact in dispute as to whether Bronster acted as an 'employer' or 'representative' . . . within the meaning of the agreement[.]" Among the attachments to its memorandum, the UPW submitted the affidavit of Rodrigues, in which he averred, *inter alia*, that it had been the ongoing understanding and intent of the parties that all state departments and agencies were included in the term "employer," as set forth in the agreement.

On September 8, 1997, the UPW filed a motion to compel arbitration and for summary judgment in its favor, relying on the argument that, pursuant to the agreement, the parties were contractually bound to submit issues of arbitrability to the arbitrator. Bronster's memorandum in opposition was filed on September 23, 1997.

Following a consolidated hearing on Bronster's motion for summary judgment and on the UPW's motion to compel arbitration and for summary judgment, conducted on October 1, 1997, the circuit court filed its order, dated November 4, 1997, granting Bronster's motion for summary judgment, denying the

UPW's cross-motion for summary judgment, and denying the UPW's motion to compel arbitration. In the order, the circuit court ruled that (1) its prior ruling—appearing in its order denying the UPW's motion to stay the proceedings pending arbitration—that it had power to decide the arbitrability of the case was the "law of the case," (2) there was "no valid agreement to arbitrate between Plaintiff Attorney General of Hawaii and Defendant [UPW]," inasmuch as the attorney general was "not a party to the agreement and there are no Unit 10 employees employed by the Department of the Attorney General," and (3) given its foregoing rulings, it need not address whether the subject matter of the dispute was arbitrable. The circuit court's final judgment in favor of Bronster was filed on the same day. The UPW filed its timely appeal on November 12, 1997.

## II. *STANDARDS OF REVIEW*

### A. *Summary Judgment*

We review [a] circuit court's [grant or denial] of summary judgment *de novo* under the same standard applied by the circuit court. *Amfac, Inc.[ v. Waikiki Beachcomber Inv. Co.,* ] 74 Haw. [85,] 104, 839 P.2d [10,] 22, *[reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992) ] (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

*Id.* (citations and internal quotation marks omitted); *see* [Hawai'i Rules of Civil Procedure (]HRCP[) ] . . . Rule 56(c) (1990).

*Roxas v. Marcos,* 89 Hawai'i 91, 116, 969 P.2d 1209, 1234 (1998) (quoting *Estate of Doe v. Paul Revere Ins. Group,* 86 Hawai'i 262, 269–70, 948 P.2d 1103, 1110–11 (1997) (quoting *Morinoue v. Roy,* 86 Hawai'i 76, 80, 947 P.2d 944, 948 (1997))) (some brackets added and some in original).

## B. *Motion To Compel Arbitration*

A petition to compel arbitration is reviewed *de novo. Dines v. Pacific Ins. Co., Ltd.,* 78 Hawai'i 325, 326, 893 P.2d 176, 177, *reconsideration denied,* 78 Hawai'i 474, 896 P.2d 930 (1995). *See also Shimote v. Vincent,* 80 Hawai'i 96, 99, 905 P.2d 71, 74 (App.), *cert. denied,* 80 Hawai'i 187, 907 P.2d 773 (1995). The standard is the same as that which would be applicable to a motion for summary judgment, and the trial court's decision is reviewed "using the same standard employed by the trial court and based upon the same evidentiary materials as were before [it] in determination of the motion." *Koolau Radiology, Inc. v. Queen's Medical Center,* 73 Haw. 433, 439–40, 834 P.2d 1294, 1298 (1992) (citation and internal quotation marks omitted); *see also Cuba v. Fernandez,* 71 Haw. 627, 631, 801 P.2d 1208, 1211 (1990); *First Hawaiian Bank v. Weeks,* 70 Haw. 392, 396, 772 P.2d 1187, 1190 (1989); *Feliciano v. Waikiki Deep Water, Inc.,* 69 Haw. 605, 607, 752 P.2d 1076, 1078 (1988). *Brown v. KFC Nat'l Management Co.,* 82 Hawai'i 226, 231, 921 P.2d 146, 151, *reconsideration denied,* 82 Hawai'i 360, 922 P.2d 973 (1996).

## III. *DISCUSSION*

"As a general rule, the courts should determine whether a dispute is subject to arbitration." *Bateman Constr., Inc. v. Haitsuka Bros. Ltd.,* 77 Hawai'i 481, 485, 889 P.2d 58, 62, *reconsideration denied,* 78 Hawai'i 421, 895 P.2d 172 (1995). In doing so, "the court[s are] limited to answering two questions: 1) whether an arbitration agreement exists between the parties; and 2) if so, whether the subject matter of the dispute is arbitrable under such agreement." *Koolau Radiology, Inc.,* 73 Haw. at 445, 834 P.2d at 1300.

In *Bateman,* the first *Koolau* question, *i.e.,* whether there was an arbitration agreement between the parties, was "not in dispute." 77 Hawai'i at 485, 889 P.2d at 62. However, with respect to the second question, we held in *Bateman* that parties are free to agree among themselves to vest sole authority in an arbitrator to determine the issue of the arbitrability of a particular subject matter so long as they do so "clearly and unmistakably." *Id.* (citations and internal quotation marks omitted). Because both parties in *Bateman* had argued the contested issues—including whether the dispute was arbitrable—to the arbitrator prior to the institution of proceedings in the circuit court, this court held that they had "clearly and unmistakably" vested the arbitrator with the power to determine whether the matter was arbitrable. *Id.*

In the present case, the UPW relies on subsection 15.26 of the agreement as establishing that the parties intended to vest the arbitrator with power to determine the arbitrability of grievances. As the UPW points out, this court had occasion to interpret contract language nearly identical to subsection 15.26 in *University of Hawaii Professional Assembly v. University of Hawaii,* 66 Haw. 207, 659 P.2d 717 (1983) (hereinafter, *UHPA* ). In that case, the university and the union disputed whether the university's decisions relating to the promotion of faculty members were subject to arbitration according to the parties' collective bargaining agreement. *UHPA,* 66 Haw. at 208, 659 P.2d at 718. The collective bargaining agreement in *UHPA* provided in relevant part that, "[i]f the University disputes the arbitrability of any grievance, the Arbitrator shall first determine whether he has jurisdiction to act; and if he finds that he has no such power, the grievance shall be referred back to the parties without decision or recommendation on its merits." *UHPA,* 66 Haw. at 210, 659 P.2d at 719. This court held that the university was not prohibited by statute from bargaining about promotion and tenure standards, *id.* at 211–13, 659 P.2d at 719–20, and that,

[w]here the agreement calls for the arbitrator to decide the issue of arbitrability, the court should compel arbitration. *United Merchants & Manufacturers v. American Textile Co.,* 512 F.Supp. 757 (S.D.N.Y. 1981). For a court to decide the issue of whether a particular grievance arises under the agreement or not would take away completely the power that the parties agreed to give the arbitrator. The arbitra-

tion process may only be used when the grievance involves the violation of a provision of the agreement. Thus the questions of arbitrability and whether the agreement is involved are one and the same. The University would have the court decide arbitrability by casting the issue in a different light, that of what the agreement covers. We would thereby decide all disputes of arbitrability, which is the very issue the parties agreed to submit to the arbitrator. This issue, therefore, should be decided in arbitration.

*Id.* at 210, 659 P.2d at 719. Without question, here, as in *UHPA*, the agreement calls "clearly and unmistakably" for the arbitrator to decide the arbitrability of a grievance.

▬ However, Bronster claims that the Department of the Attorney General is not a party to the agreement. If she is correct, then she could not have "bargained for" "the arbitrator's judgment" with respect to the question of arbitrability. *Cf. Bateman*, 77 Hawai'i at 485–86, 889 P.2d at 62–63 (noting, with respect to the parties in the case, that, "[a]fter all, it was [the arbitrator's] judgment they had bargained for, not a court's" (quoting *Morrison–Knudsen Co. v. Makahuena Corp.*, 66 Haw. 663, 670, 675 P.2d 760, 766 (1983) (brackets in original)). In other words, while the parties may contractually excise the court from the determination of the second question articulated in *Koolau, supra*, no agreement can divest the court of the authority to address the first. Accordingly, the question whether the Department of the Attorney General is a "party" to the agreement poses a preliminary issue for the court to decide.

▬ With respect to that issue, Bronster argues that her department is not a party to the agreement because it (1) is not expressly

enumerated therein, (2) employs no institutional, health, or correctional workers, and (3) is statutorily assigned the role of "counsel to Employer" by HRS § 26–7 (1993).[2] She further asserts that, "in accordance to the terms of the [agreement, the UPW] should have filed its grievance against the Dept. of Public Safety, not against the Attorney General." Bronster's arguments are unconvincing.

As noted *supra* in section I.A, the agreement expressly states in its preamble that the term "the Employer" means "the STATE OF HAWAII, THE CITY AND COUNTY OF HONOLULU, THE COUNTY OF HAWAII, the COUNTY OF MAUI, and the COUNTY OF KAUAI[.]" The agreement was signed on behalf of the State by the governor, among others. Accordingly, the agreement establishes by its plain language that the parties thereto are (1) the UPW, (2) the City and County of Honolulu, (3) the Counties of (a) Hawai'i (b) Kauai, and (c) Maui, and (4) the State as a whole—*not* merely those agencies or departments of the State that directly employ "Unit 10" employees. HRS § 26–7, upon which Bronster relies, merely establishes that the Department of the Attorney General is, along with many others, a "department" or instrumentality of the State. Inasmuch as the UPW's grievance was against a department of the State, it was therefore against "the State of Hawaii"—a party to the agreement. Bronster does not argue that the agreement was invalid, or that Governor Waihee lacked the authority to obligate the State to act through the Department of the Attorney General with respect to its agreement with the UPW. *See* Haw. Const. art. V, §§ 1 ("The executive power of the State shall be vested in a governor."), and 6 ("Each principal department shall be under the supervision of the gover-

---

**2.** HRS § 26–7 provides in relevant part:

**Department of the attorney general.** The department of the attorney general shall be headed by a single executive to be known as the attorney general.

The department shall administer and render state legal services, including furnishing of written legal opinions to the governor, legislature, and such state departments and officers as the governor may direct; represent the State in all civil actions in which the State is a

party; approve as to legality and form all documents relating to the acquisition of any land or interest in lands by the State; and, unless otherwise provided by law, prosecute cases involving violations of state laws and cases involving agreements, uniform laws, or other matters which are enforceable in the courts of the State. The attorney general shall be charged with other duties and have such authority as heretofore provided by common law or statute.

nor[.]") (1978). Accordingly, the first *Koolau* question must be answered, as a matter of law, in favor of the UPW.

 The true dispute between the parties, it appears, is whether the UPW complied with Section 15 of the agreement in bringing its grievance "against" Bronster as Attorney General and whether the State is bound by the terms of the agreement to act in a particular way through its Attorney General, *i.e.*, whether the Attorney General must compromise with the UPW as to which private counsel will be provided to Unit 10 employees who are "sued for actions taken by them in the course and scope of their employment and within the scope of their duties and responsibilities." These issues, however, involve, respectively, (1) the arbitrability of the dispute and (2) the scope of the agreement. Both have been expressly reserved by the parties for determination by the arbitrator. Thus, the circuit court lacked the jurisdiction to address the second *Koolau* question.

We hold that the circuit court erred (1) in granting Bronster's motion for summary judgment and (2) in denying the UPW's (a) motion for summary judgment and (b) motion for an order to compel arbitration.

### IV. *CONCLUSION*

Based on the foregoing reasoning, we vacate the circuit court's judgment and orders (1) granting Bronster's motion for summary judgment, and (2) denying the UPW's motions for (a) summary judgment and (b) an order to compel arbitration. We remand the case to the circuit court for the entry of orders granting the UPW's motions (1) for summary judgment, and (2) to compel arbitration.