990 P.2d 1150

**Yoshitsugi HOKAMA, Plaintiff–Appellant,**

v.

**UNIVERSITY OF HAWAII,**
Defendant–Appellee.

No. 21885.

Supreme Court of Hawai'i.

Dec. 22, 1999.

Jack C. Morse, Honolulu, on the briefs for plaintiff-appellant.

Russell A. Suzuki and Pamela A. Toguchi, Deputy Attorneys General, on the briefs for defendant-appellee.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by NAKAYAMA, J.

Plaintiff-appellant Yoshitsugi Hokama, Ph.D. (Dr. Hokama), appeals the trial court's grant of summary judgment in favor of defendant-appellee University of Hawai'i (university). On appeal, Dr. Hokama argues that the circuit court erred in concluding that he failed to exhaust his administrative remedies before filing the present lawsuit. Because the only viable claim in Dr. Hokama's complaint arises from the interpretation and application of the collective bargaining agreement (agreement), we affirm the circuit court's ruling. However, insofar as Dr. Hokama's error in this case was not unreasonable, we hold that Dr. Hokama is not presently barred by the contractual limitations period from pursuing his claim in the administrative forum. Dr. Hokama may file a grievance under the collective bargaining agreement within the applicable limitations period, as measured from the date of this opinion.

## I. BACKGROUND

Dr. Hokama is a professor in the Pathology Department of the John A. Burns School of Medicine, University of Hawai'i. While employed by the university, Dr. Hokama developed a methodology for detecting the presence of ciguatoxin in fish. The university, as Dr. Hokama's employer, asserted rights to Dr. Hokama's invention and, on May 25, 1990, assigned the test patent to Hawai'i Chemtect, Inc. (Chemtect), a California corporation.

On February 22, 1994, Chemtect filed a complaint in the Superior Court of the State of California against Dr. Hokama and the University of Hawai'i for, *inter alia*, breach of contract and fraud. Dr. Hokama was sued individually and in his capacity as an agent of the university. Dr. Hokama retained attorney Daniel Lee to represent him in his individual capacity. On March 23, 1994, Dr. Hokama's counsel sent a letter to the university stating that "we believe the university ... is legally required to respond to this lawsuit on behalf of ... Dr. Hokama." On March 31, 1994, the State of Hawai'i, Department of the Attorney General (State), responded and declined to represent Dr. Hoka-

ma due to an alleged conflict of interest. The State informed Dr. Hokama's counsel that "Hokama should seek private legal representation to respond to the complaint." Dr. Hokama retained trial attorneys Philip Toomey in California and Jack Morse in Honolulu to represent him in the lawsuit.

Dr. Hokama thereafter requested assistance from the University of Hawai'i Professional Assembly (UHPA), the faculty union. UHPA tendered the request to its insurance carrier, Horace Mann Insurance Company. Horace Mann retained Bruce Gridley and Robert Nation, attorneys licensed in California, to defend Dr. Hokama. Gridley and Nation assumed the defense from Toomey. Dr. Hokama continued to retain the services of Lee and Morse in Hawai'i.

On January 30, 1995, Dr. Hokama filed a grievance based on article III, section D.1 [1] of the 1993–95 collective bargaining agreement [2] between UHPA and the university. After a hearing on March 20, 1995, the hearings officer rendered a Step 1 decision in favor of the university.[3] Dr. Hokama appealed this decision on May 1, 1995.

A Step 2 grievance hearing was held on May 18, 1995. On June 2, 1995, the hearings officer issued a decision, finding that the claims against Dr. Hokama arose within the scope of his employment with the university and concluding that the university had a duty to defend Dr. Hokama. On September 13, 1995, the university hired attorney Alvin Ito to represent Dr. Hokama. The contract provided that the university would fund Ito's representation in an amount not to exceed $40,000. On December 12, 1995, Ito sent a letter to the university requesting an increase in the amount of authorized compensation to $70,000. This request was refused.

Trial in California commenced on February 21, 1996. Having exhausted the amount allocated for his services, Ito did not appear at the trial. Gridley and Nation represented Dr. Hokama at trial. After trial, judgment was entered in favor of Dr. Hokama on all counts on May 2, 1996.

On August 29, 1996, Dr. Hokama filed a complaint in the instant action. Dr. Hokama's complaint alleged three causes of action: (1) tortious breach of the duty to provide a defense; (2) breach of contract; and (3) tortious bad faith. The complaint sought, as special damages, legal fees that Dr. Hokama had incurred for private counsel due to the university's alleged failure to provide him with legal representation pursuant to the collective bargaining agreement. On August 29, 1997, the university filed a motion for summary judgment, arguing, *inter alia,* that Dr. Hokama failed to exhaust his administrative remedies under the grievance procedure in the collective bargaining agreement.

After a hearing, the circuit court granted the university's motion for summary judgment on November 21, 1997. The order stated that:

> Viewing the evidence and inferences in the light most favorable to [Dr. Hokama], there are no disputed issues of material

1. This section provides in relevant part:
   The Employer[, the university,] shall provide legal counsel for a Faculty Member upon request when:
   a. The Faculty Member is sued for actions taken by the Faculty Member in the course of the Faculty Member's employment and within the scope of the Faculty Member's duties and responsibilities.

2. The union and university have since entered into a new agreement, covering 1995 to 1999, without any relevant changes in the agreement's content.

3. The agreement establishes a three-step grievance procedure as follows:

   **Step 1.** A grievance shall be filed with the Chancellor, Executive Vice Chancellor or appropriate Vice President at [the university]....
   **Step 2.** If the response at Step 1 does not resolve the grievance, the grievant may appeal the Step 1 response by filing an appeal with the President of the University or the President's designee....
   The Employer and the Union may, by mutual agreement, waive any or all of the above steps and proceed directly to Step 3.
   **Step 3. Arbitration.** If the grievance has not been settled at Step 2, then ... the Union may request arbitration....

fact, and [the university] is entitled to a dismissal as a matter of law[4] based on the following:

1. [Dr. Hokama] presents claims for breach of duty, breach of contract, and bad faith for [the university's] alleged failure to defend [Dr. Hokama] in a lawsuit entitled *Hawaii Chemtect Inc. v. Yoshitsugi Hokama, et al.*, Case No. BC099208, Superior Court of California for the County of Los Angeles ("the underlying action").

2. To the extent that [the university] owed a duty to defend [Dr. Hokama] in the underlying action, the obligation or duty to defend [Dr. Hokama], if any, arises from the collective bargaining agreement ("agreement") between [UHPA] and the Board of Regents of the [university].

3. Pursuant to *Marshall v. University of Hawaii*, 9 Haw.App. 21[, 821 P.2d 937] (1991), [Dr. Hokama]'s action is barred on the ground that he has failed to exhaust his administrative remedies which exist by statute and under the agreement.

Based on the foregoing (and without reaching the issues of whether a duty to defend [Dr. Hokama] exists and whether [the university] breached the duty to defend, if any), [the university]'s motion for summary judgment filed August 29, 1997 is granted[.]

(Brackets added.)

On appeal, Dr. Hokama argues that the circuit court erred in granting summary judgment because (1) the hearing officer lacked the authority to award the remedy sought in his complaint; and (2) Dr. Hokama exhausted his administrative remedies by filing his initial grievance in January 1995.

## II. STANDARD OF REVIEW

We review [a] circuit court's award of summary judgment de novo under the same standard applied by the circuit court. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 104, 839 P.2d 10, 22, *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992) (citation omitted). As we have often articulated:

> [s]ummary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

*Id.* (citation and internal quotation marks omitted); *see* Hawaiʻi Rules of Civil Procedure (HRCP) Rule 56(c) (1990). "A fact is material if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Hulsman v. Hemmeter Dev. Corp.*, 65 Haw. 58, 61, 647 P.2d 713, 716 (1982) (citations omitted).

*Konno v. County of Hawaiʻi*, 85 Hawaiʻi 61, 70, 937 P.2d 397, 406 (1997) (quoting *Dunlea v. Dappen*, 83 Hawaiʻi 28, 36, 924 P.2d 196, 204 (1996)) (brackets in original). "The evidence must be viewed in the light most favorable to the non-moving party." *State ex rel. Bronster v. Yoshina*, 84 Hawaiʻi 179, 186, 932 P.2d 316, 323 (1997) (citing *Maguire v. Hilton Hotels Corp.*, 79 Hawaiʻi 110, 112, 899 P.2d 393, 395 (1995)). In other words, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to [the party opposing the motion]." *Maguire*, 79 Hawaiʻi at 112, 899 P.2d at 395 (citation omitted).

*Pacific Rent–All*, 90 Hawaiʻi at 322, 978 P.2d at 760 (quoting *State Farm Mut. Auto. Ins. Co. v. Murata*, 88 Hawaiʻi 284, 287–88, 965 P.2d 1284, 1287–88 (1998)).

---

4. Notwithstanding this language, it is clear that the circuit court order operated as a grant of summary judgment under Hawaiʻi Rules of Civil Procedure (HRCP) Rule 56, rather than a dismissal as a matter of law under Rule 12(b). *See* HRCP Rule 12(b). *See also State Farm Fire and Casualty Co. v. Pacific Rent–All, Inc.*, 90 Hawaiʻi 315, 322, 978 P.2d 753, 760 (1999).

## III. DISCUSSION

A. *The Grievance Procedure Is the Exclusive Forum for Pursuing Claims Arising from the Interpretation and Application of the Terms of the Collective Bargaining Agreement.*

■ It is well-settled that an employee must exhaust any grievance or arbitration procedures provided under a collective bargaining agreement before bringing a court action pursuant to the agreement. *See Santos v. State Dept. of Transp., Kauai Div.*, 64 Haw. 648, 655, 646 P.2d 962, 967 (1982); *Marshall v. University of Hawai'i*, 9 Haw. App. 21, 30, 821 P.2d 937, 943 (1991); *Winslow v. State*, 2 Haw.App. 50, 55, 625 P.2d 1046, 1050 (1981); *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 163–64, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983).[5] Strong policy considerations support this rule. The exhaustion requirement, first, preserves the integrity and autonomy of the collective bargaining process, allowing the parties to develop their own uniform mechanism of dispute resolution. *See generally DelCostello*, 462 U.S. at 169, 103 S.Ct. 2281; *Clayton v. International Union, United Auto., Aerospace, and Agr. Implement Workers of America*, 451 U.S. 679, 686, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). It also promotes judicial efficiency by encouraging the orderly and less time-consuming settlement of disputes through alternative means. *See generally Dorrance v. Lee*, 90 Hawai'i 143, 147, 976 P.2d 904, 908 (1999) (quoting *Richardson v. Sport Shinko (Waikiki Corp.)*, 76 Hawai'i 494, 510, 880 P.2d 169, 185 (1994)).

HRS § 89–11(a) (1993 & Supp.1998) provides: "A public employer shall have the power to enter into written agreement with the exclusive representative of an appropriate bargaining unit setting forth a grievance procedure culminating in a final binding decision, *to be invoked in the event of any dispute concerning the interpretation or application of a written agreement.*" (Emphasis

added.) The plain language of the statute indicates that the grievance procedure shall serve as the exclusive vehicle for resolving disputes regarding the terms of the collective bargaining agreement.

The current agreement between the university and UHPA establishes such a grievance procedure, providing in relevant part:

### ARTICLE XXIII, GRIEVANCE PROCEDURE

#### A. DEFINITION

A grievance is a complaint by a Faculty Member of the Union concerning the interpretation and application of the express terms of this Agreement. . . .

#### B. GENERAL

1. Faculty are encouraged to work out grievances with their immediate supervisors on an informal basis without resort to the formal grievance procedure, whenever possible. If it is not possible to resolve the grievance informally, and the Faculty Member desires to pursue the matter, the procedures under C shall apply. . . .

#### C. PROCEDURES

1. Requirements of Filing a Formal Grievance

. . . .

2. Formal Grievance Procedure

[*See supra* note 3]

The agreement states that the grievance procedure "shall" apply if informal negotiations fail, thereby allowing no other alternative forums. *See Winslow*, 2 Haw.App. at 55, 625 P.2d at 1050 (holding that the agreement controls "where the terms of public employment are covered by a collective bargaining agreement pursuant to Chapter 89 and the agreement includes a grievance procedure to dispose of employee grievances against the

5. Although federal labor law does not govern this case, *see* Labor Management Relations Act, § 2(5), 29 U.S.C. § 152(5) (1994) (excluding public employers from coverage under the act), we may consult federal precedent to guide our interpretation of our public employment laws.

public employer"). *See also Republic Steel Corp. v. Maddox,* 379 U.S. 650, 658–59, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965) (holding that any doubts must be resolved against interpretation of the grievance procedure as nonexclusive); *Jefferson County School Dist. v. Shorey,* 826 P.2d 830, 844 (Colo.1992) (same).

■ Based on the plain import of the statute and the agreement, as well as the policies underlying the exhaustion requirement, we hold that Dr. Hokama must pursue any claims arising from the agreement in the administrative forum rather than in circuit court.

B. *The Sole Viable Cause of Action Alleged by Dr. Hokama Arises from the Application of the Terms of the Collective Bargaining Agreement and Must, Therefore, Be Pursued within the Administrative Forum.*

In the instant case, Dr. Hokama complaint states three causes of action: (1) tortious breach of the duty to provide a defense; (2) breach of contract; and (3) tortious bad faith. For purposes of the exhaustion requirement, we must determine whether these claims arise from the terms of the collective bargaining agreement.

Dr. Hokama argues that the tort claims lie within the circuit court's exclusive jurisdiction. As a general proposition, we agree that the contractual grievance procedure does not apply to tort actions. *See Marshall,* 9 Haw. App. at 32, 821 P.2d at 947 (holding that the plaintiff may pursue a claim for invasion of privacy in circuit court); *Conaway v. Webster City Prods. Co.,* 431 N.W.2d 795 (Iowa 1988) (ruling that plaintiff need not pursue tort claims for retaliatory discharge under grievance procedure). Rather, such claims must, as a matter of law, be brought in circuit court. *See* HRS § 662–3 (1993) (providing that the circuit courts "shall have original jurisdiction of all tort actions on claims against the State").

■ In this case, however, Dr. Hokama fails to assert any cognizable tort claims.

Regarding the first count of his complaint, "tortious breach of the duty to provide a defense," the duty described arises solely from contract, and the "tortious breach" of this duty amounts to nothing more than a breach of the contract itself. This court recently repudiated the cause of action for tortious breach of contract in *Francis v. Lee Enters.,* 89 Hawai'i 234, 971 P.2d 707 (1999). Consequently, Dr. Hokama's claim for "tortious breach of the duty to provide a defense" is no longer viable.

■ Dr. Hokama also asserts "tortious bad faith" on the part of the university, analogizing the university to an "insurer with regard to its duty to provide a full defense." The university, however, is Dr. Hokama's employer, not his insurer. Dr. Hokama provides no legal support for this claim, and we are unaware of any authority recognizing such a cause of action beyond the insurance context. Thus, Dr. Hokama's "tortious bad faith" claim also fails.

■ Of the three counts alleged in Dr. Hokama's complaint, only the "breach of contract" claim remains. This claim, on its face, arises from the "interpretation and application of the express terms" of the agreement. Dr. Hokama, however, avers that the grievance procedure cannot grant his requested relief, namely, damages for the university's failure to provide timely and adequate legal representation. An aggrieved party need not exhaust administrative remedies where no effective remedies exist. *See Winslow,* 2 Haw.App. at 56, 625 P.2d at 1051; *Lane v. Yamamoto,* 2 Haw.App. 176, 178–79, 628 P.2d 634, 636 (1981); *Waugh v. University of Hawaii,* 63 Haw. 117, 129, 621 P.2d 957, 967 (1980).

■ It is entirely unclear from the language of the agreement whether the damages sought by Dr. Hokama are available under the grievance procedure. Arbitrators, however, normally have broad discretion to fashion appropriate remedies. *See University of Hawaii Professional Assembly ex rel. Daeufer v. University of Hawaii,* 66 Haw.

214, 223, 659 P.2d 720, 727 (1983) (recognizing the "need for flexibility" in formulating remedies in arbitration (citation omitted)); *Mathewson v. Aloha Airlines*, 82 Hawai'i 57, 79 n. 22, 919 P.2d 969, 991 n. 22 (1996) (noting that arbitrators "may grant whatever remedy to right the wrongs in their jurisdiction" (citation omitted)). In this case, Dr. Hokama has not yet pursued his damage claims in the administrative forum. Until he actually does so, any assessment of the actual availability of the relief requested remains speculative and premature.[6]

■ For the same reason, we reject Dr. Hokama's further argument that his initial grievance, filed during the pendency of the lawsuit and resolved in his favor, satisfied the exhaustion requirement. The "Requirements for Filing a Formal Grievance" subsection of the agreement, Article XXIII, section C.1., states:

A grievance must be submitted in writing and shall contain (1) a statement of the facts concerning the grievance; (2) the specific provision of this Agreement alleged to have been violated; (3) *the relief requested;* and (4) whether the Faculty Member attempted an informal adjustment of the grievance and, if so, with whom.

(Emphasis added.)

In his initial grievance, Dr. Hokama requested and received a declaration that the university was required to defend him in the lawsuit. Dr. Hokama never sought damages for the university's failure to provide representation in a timely manner, nor did he ever contest the university's denial of his request for an increase in the amount provided for

his defense. Dr. Hokama's damage claims differ substantially from his previous claim of entitlement to representation in the first instance. As a result, we cannot say that his initial grievance exhausted the administrative remedies available with respect to his present claims.

In sum, although tort claims lie outside the scope of the grievance procedure, Dr. Hokama does not raise any cognizable claims for relief of such a nature in the present case. The only viable claim in his complaint, "breach of contract," arises from the agreement and, thus, must be pursued in the administrative forum. Accordingly, the circuit court properly granted defendant's motion for summary judgment in this case.

C. *Dr. Hokama May Still Pursue His Contract Claim in the Administrative Forum*

Although we hold that Dr. Hokama should submit his contract claim to the grievance procedure, we are concerned that this claim may fail due to apparent noncompliance with the limitations period for that procedure. Article XXIII, section C.1. of the agreement provides that

[a] grievance must be filed within twenty (20) calendar days ... of the date following the alleged violation giving rise thereto, or the date on which the Faculty Member or the Union first knew or reasonably should have known of such alleged violation, whichever date is later. There shall be no obligation by the Employer to consider any grievance not filed within the specified time limit and in accordance with the specific procedure stated in each step.

The instant agreement provides: "If the Employer disputes the arbitrability of a grievance, the Arbitrator shall first determine whether the Arbitrator has jurisdiction to act[.]" We have examined this identical language in prior versions of the agreement and have determined it vests the arbitrator with the sole authority to decide questions of arbitrability. *See University of Hawaii Professional Assembly v. University of Hawaii*, 66 Haw. 207, 210, 659 P.2d 717, 719 (1983); *Bronster*, 90 Hawai'i at 14–15, 975 P.2d at 771–72.

---

6. The question whether the remedies are available or adequate is related to, but distinct from, the question whether the subject matter of the dispute lies within the arbitrator's jurisdiction, otherwise known as "arbitrability." *See Advanced Micro Devices, Inc. v. Intel Corp.*, 9 Cal.4th 362, 36 Cal.Rptr.2d 581, 885 P.2d 994, 999–1002 (1994) (comparing the two issues). Generally, courts determine arbitrability, unless the parties "clearly and unmistakably" provide otherwise. *See Bronster v. United Pub. Workers, AFSCME, Local 646, AFL–CIO*, 90 Hawai'i 9, 14, 975 P.2d 766, 771 (1999).

Questions relating to such "procedural" requirements of the grievance process, as with any other question based on the interpretation of the agreement, usually are reserved for the arbitrator. *See John Wiley & Sons, Inc. v. Livingston,* 376 U.S. 543, 557–59, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *Dalton v. Schneider,* 245 A.D.2d 1101, 667 N.Y.S.2d 523, 524 (1997). We observe, nevertheless, that the period for filing the grievance provisions appears to have long expired. Thus, although Dr. Hokama has already resorted to the grievance process with some success, he may now be foreclosed from pursuing any further claims arising from the university's prior or subsequent refusals to provide him with representation, simply because he did not previously submit such claims to the grievance procedure, either in his initial grievance or thereafter.

We cannot accept such a harsh prospect. The exhaustion requirement aims to redirect grievances for their proper resolution, not to preclude them altogether. Faced with a similar situation, another court declined to allow the strict application of the contractual limitations period. *See Painters Dist. Council No. 2 v. Tiger Stripers, Inc.,* 582 F.Supp. 860 (E.D.Mo.1984). The *Painters* court explained:

> The issue of whether [claimant]'s contractual dispute with defendant is procedurally subject to resolution by the Joint Trade Board and/or an arbitrator, is normally a question for the Board or the arbitrator, not this Court. However, this is not a normal case. The [claimant] believed that the contractual grievance procedure was neither mandatory nor available to it. Although [claimant]'s belief was without merit, as held herein, it was not unreasonable. To now hold [claimant] to the time period specified in the contract for initiating the grievance procedure—here, five (5) days from the occurrence complained of—would neither be fair nor serve to further the purposes of the exhaustion requirement.

*Id.* at 865 (citation omitted and brackets added).

Likewise, in this case, we are compelled to excuse Dr. Hokama's failure to previously pursue his damage claims in the administrative forum.[7] At the time of his initial grievance, Dr. Hokama understandably focused his concern on securing the representation due to him under the agreement in the first instance, rather than seeking immediate compensation for expenses already incurred. Dr. Hokama's decision not to administratively contest the university's later denials of representation was also "not unreasonable," insofar as he had already resorted to the administrative process and had, indeed, received an apparently definitive ruling in his favor. The lack of any clear indication of the availability of such remedies under the agreement undoubtedly reinforced Dr. Hokama's apparent belief that further action at the administrative level was either unnecessary or futile.

For these reasons, we hold that Dr. Hokama may still pursue his contract grievance in the administrative forum. *Cf. Hawaii Blind Vendors Ass'n v. Department of Human Servs.,* 71 Haw. 367, 791 P.2d 1261 (1990) (allowing plaintiffs to request administrative hearing without regard to limitations period because, *inter alia,* "[b]efore a right to relief is barred . . . , the agency process ought to be of such a nature as to impress fully on the litigant the opportunity for recourse it supplies and the consequence of failure to seek such recourse"). The 20-day limitations period under the agreement should not operate to automatically bar Dr. Hokama's claims in this case. Instead, we hold, as the federal district court did in *Painters,* that the limitations period shall run from the date of this opinion. *See* 582 F.Supp. at 865.

## IV. CONCLUSION

Based on the foregoing, we affirm the circuit court's order granting defendant's mo-

---

7. Our holding is limited to the facts of this case. We would be less inclined to excuse such a failure to comply with the procedural requirements in the future. Moreover, we intimate no opinion as to the validity of Hokama's claims.

tion for summary judgment in this case. Dr. Hokama, however, may still file a grievance in the administrative forum within the 20–day limitations period under the agreement, which shall run from the date of this opinion.