**LOCAL # 850, INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, Plaintiff-Appellant,**

v.

**T.I.M.E.–DC, INC., and General Drivers, Chauffeurs, Teamsters and Helpers, Local 886, Defendants-Appellees.**

No. 81–1723.

United States Court of Appeals, Tenth Circuit.

April 22, 1983.

D. Hays Foster, Oklahoma City, Okl., for plaintiff-appellant.

R.F. Beagle, Jr. and Richard B. McKelvey of Gage & Tucker, Kansas City, Mo., and Peter B. Bradford of Bradford & Haswell, Oklahoma City, Okl., for defendant-appellee T.I.M.E.–DC, Inc.

George J. McCaffrey of Lampkin, Wolfe, McCaffrey & Tawwater, Oklahoma City, Okl., for defendant-appellee General Drivers, Chauffeurs, Teamsters and Helpers, Local 886.

Before BARRETT, McKAY and SEYMOUR, Circuit Judges.

BARRETT, Circuit Judge.

Local # 850 International Association of Machinists and Aerospace Workers (Machinists) appeals from the district court's supplemental memorandum and order and judgment of May 26, 1981, dismissing Machinists' suit brought to require T.I.M.E.–DC of Oklahoma City, Oklahoma, employer, to recognize the validity of an arbitral decision requiring that T.I.M.E.–DC assign yard hostling and hook-up work to Machinists. The district court, in dismissing the suit, directed the parties to submit the work assignment dispute to binding tripartite arbitration. In so doing the district court stated, *in part:*

> The only issue to be submitted to the arbitrator shall be whether the yard hostling or hook-up work in question shall be assigned to the Teamster employees in T.I.M.E.–DC's Oklahoma City, Oklahoma, city pickup and delivery unit, or whether it shall be assigned to the Machinist employees in T.I.M.E.–DC's Oklahoma City, Oklahoma, shop unit. In determining this issue, the arbitrator shall be allowed to admit into evidence all collective bargaining agreements, both past and present, between the parties, and admit all other testimony and documents which the arbitrator may deem relevant and

material. No issue or evidence as to any back pay or other monetary relief shall be submitted to the arbitrator, and there shall be no award by the arbitrator against T.I.M.E.–DC for back pay or any other monetary relief. The costs of this arbitration proceeding shall be borne equally by the parties.

[R., Vol. II, p. 410].

On appeal, Machinists contends that the tripartite arbitration ordered by the district court is not a proper vehicle for judicial determination of conflicting arbitration awards and that assignment of the parties to tripartite arbitration constitutes an abdication of judicial authority to a third party. Further, Machinists contends that the district court failed to make sufficient findings as required by Fed.R.Civ.P. 41(b). Appellees, T.I.M.E.–DC and Teamsters each contend, contrary to Machinists, that the district court properly exercised its power in submitting the subject work assignment dispute to tripartite arbitration; that even though the district court denied the respective motions for summary judgment filed by the parties, the court did, in legal effect, enter summary judgment pursuant to rule 56, Fed.R.Civ.P. on T.I.M.E.–DC's alternate theory, which was acquiesced in by Teamsters, (i.e., that the work assignment dispute should be submitted to tripartite arbitration); and that rule 52(a), Fed.R.Civ.P. provides that findings of fact and conclusions of law are not required in relation to decisions on summary judgment motions filed under rule 56. We agree.

A careful reading of the memorandum and order of December 19, 1978, as supplemented by the order and judgment of May 26, 1981, sets forth the court's rationale in support of its tripartite arbitration order:

[T]wo directly conflicting arbitration awards have been issued requiring defendant T.I.M.E.–DC to assign the yard hostling or hook-up work in question herein to both of the Union parties to this litigation. The first arbitration award (by the Southern Multi-State Grievance Committee) required the assignment of this work to the Teamster employees in

T.I.M.E.–DC's Oklahoma City, Oklahoma city pickup and delivery unit. This award was entered on September 24, 1973. Thereafter, T.I.M.E.–DC complied with and implemented this award. On February 28, 1975, some seventeen months later, the second arbitration award (by a Mr. Harr) required the assignment of this work to the Machinist employees in T.I.M.E.–DC's Oklahoma City, Oklahoma shop unit. This placed T.I.M.E.–DC in the impossible position of having to comply with both awards coextensively, and, therefore, it has continued to comply with the first award, which required the assignment of the work to the Teamster employees.

[R., Vol. II, pp. 409–10].

Unlike Machinists, we have no difficulty understanding the district court's reasoning for entry of the order. We are not suffering the disability expressed by Machinists in "having to probe the Court's mental processes" for its reasoning. [See Reply Brief of Machinists, p. 4].

Significant here, Machinists, in its reply brief, states for the first time that it "adopt[s] the argument asserted by T.I.M.E.–DC that the trial Court has the power to order tripartite arbitration. It is undisputable [sic] that the trial Court has the ability to order the same in order to promote industrial peace. The Machinists has no quarrel with submitting the matter to tripartite arbitration." [Reply Brief of Machinists, pp. 4–5]. Even so, Machinists complains that to submit the matter to tripartite arbitration on the issue of "who gets the work" deprives "the Machinists of seven years of back pay when the arbitrator returns the work to the shop unit and gives the Teamsters and T.I.M.E.–DC the benefit of their 'sweetheart' deal." [Reply Brief of Machinists, p. 5].

Contrary to Machinists' contention, the record refutes the existence of any "sweetheart deal". Commencing in 1954 through July 1, 1973, the employees in the shop unit at T.I.M.E.–DC's Oklahoma City, Oklahoma, terminal were represented jointly by the Machinists and Teamsters, subject to a

single collective bargaining agreement which established work classifications under which work assignments were made without dispute. Shortly prior to the expiration of the joint shop contract in 1973, both unions notified T.I.M.E.–DC that they no longer wished to continue under the tripartite collective bargaining agreement. Accordingly, a petition was filed by Machinists with the National Labor Relations Board (NLRB) requesting an election for certification as the exclusive bargaining agent for collective bargaining purposes for specified personnel. Significantly, the yard hostling work, the subject of this dispute, was omitted from the NLRB representation petition. Subsequently, the Teamsters filed a petition with the NLRB requesting to be certified as the exclusive bargaining agent for the yard hostling work unit. The Machinists won the representation election for the unit identified in its petition.

Following the certification of Machinists, a dispute arose between T.I.M.E.–DC and Teamsters with respect to the work at issue here, *i.e.,* certain hostling or hook-up work, which involves moving tractors and trailers to and from T.I.M.E.–DC's Oklahoma City terminal to and from the loading dock area. Pursuant to a grievance filed by Teamsters, invoking terms of outstanding agreements between T.I.M.E.–DC and Teamsters, a hearing was held. Machinists was not a party thereto. The Multi-State Grievance Committee on September 24, 1973, ruled that Teamsters was the proper unit to undertake the hook-up work in question.

On February 15, 1974, Machinists filed a grievance under its new collective bargaining agreement; however, before the grievance was fully processed, Machinists filed two unfair labor practices against T.I.M.E.–DC and Teamsters, claiming that T.I.M.E.–DC violated sections 8(a)(1), 8(a)(3) and 8(a)(5) of the National Labor Relations Act. On September 4, 1974, the regional director of NLRB dismissed these two unfair labor charges and found that the disputed work assignments were properly assigned to Teamsters. No appeal therefrom was taken by Machinists to general counsel for NLRB. Rather, Machinists turned back to the grievance route, which ultimately resulted in the arbitrator's (Mr. Harr's) opinion rendered February 28, 1975, that T.I.M.E.–DC was obligated to recognize Machinists for performance of the work in question. At this point, T.I.M.E.–DC was, to be sure, faced with inconsistent mandates, veritably on the horns of a dilemma. When T.I.M.E.–DC did not accede to arbitrator Harr's opinion, Machinists filed this suit seeking to enforce that decision.

The Congress, in enactment of 29 U.S. C.A. § 185(a) of the Labor Management Relations Act expressed a policy favoring the settlement of labor disputes by the parties through the arbitration process in order to further the goals of industrial self government. *See Steelworkers' Trilogy,* 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960). In *Carey v. Westinghouse Electric Corp.,* 375 U.S. 261, 84 S.Ct. 401, 11 L.Ed.2d 320 (1964) the Supreme Court held that a dispute between an employer and two unions regarding work assignments of certain employees of the two unions constitutes a jurisdictional dispute and that grievance arbitration is a favored method of settlement of such disputes even though the NLRB is empowered to refuse to abide by an arbitration award.

In *Sheet Metal Workers International Association v. Los Alamos Constructors, Inc.,* 550 F.2d 1258 (10th Cir.1977) this court favorably relied on *Local 416, Sheet Metal Workers International Association v. Helgesteel Corp.,* 507 F.2d 1053 (7th Cir.1974). In *Local 416,* as here, a work assignment dispute between two unions and the employer was involved. The "race" was won by the union which first obtained a favorable arbitration award. The court of appeals refused to enforce that arbitration award, however, and, significant to our case, ordered that all of the parties repair to tripartite arbitration. The court ordered that in such arbitration due consideration must be given to the collective bargaining agreement, agreements other than and in addition to the collective bargaining agreement and the custom and practice in the trade.

If the regional director of the NLRB finds reasonable cause to believe that an unfair labor practice has been committed, proceedings pursuant to 29 U.S.C.A. § 160(k) are initiated. That stage was never reached in the case at bar, because the regional director *did not* find reasonable cause, following investigation, to support Machinists' unfair labor practice charges lodged against T.I.M.E.–DC, in that there was not sufficient evidence to support a finding that T.I.M.E.–DC had violated 29 U.S.C.A. § 158. The matter was not pursued to general counsel for NLRB. The Congress, in 29 U.S.C.A. § 153(d), granted unreviewable discretion to NLRB general counsel and the regional director and staff personnel assisting them in determining whether an unfair labor practice complaint should be issued following investigation of the unfair labor practice charges. *See Vaca v. Sipes,* 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967). In deciding work dispute assignments, the NLRB considers, *inter alia,* certification and collective bargaining agreements, the employer's practice and preference, the area and industry practice, skills and safety, and efficiency and economy of operation.

Under the facts and circumstances of this record, we hold that the memorandum and order of the district court dated December 19, 1978, as supplemented by order and judgment of May 26, 1981, must be affirmed.

In its reply brief, Machinists belatedly agrees with T.I.M.E.–DC that the work assignment dispute involved here should be submitted to tripartite arbitration. It contends, however, that the case first should be reversed and remanded to the district court so it can determine:

> [I]f in fact a work jurisdiction dispute exists, or if the transfer of the hook-up work was the result of a "deal" between T.I.M.E.–DC and the Teamsters, thereby forming a knowledgable [sic] foundation upon which to formulate an issue to be submitted to tripartite arbitration. To submit the matter to tripartite arbitration on the issue of "who gets the work"

deprives the Machinists of seven years of back pay when the arbitrator returns the work to the shop unit and gives the Teamsters and T.I.M.E.–DC the benefit of their "sweetheart" deal.

[Reply Brief of Machinists, p. 5]. There is no merit in this contention. The trial court correctly pinpointed T.I.M.E.–DC's posture, following the conflicting arbitral decisions, as a "dilemma" which the court obviously did not attribute to any bad faith, default, "sweetheart deal", or other factor justifying any judgment for back pay or other monetary award. Furthermore, the district court, in submitting the work dispute assignment issue to the arbitrator, granted broad power of inquiry: "In determining this issue, the arbitrator shall be allowed to admit into evidence all collective bargaining agreements, both past and present, between the parties, and admit all other testimony and documents which the arbitrator may deem relevant and material." [R., Vol. II, p. 410].

In our view, Machinists, by argument per reply brief, that this matter be submitted to tripartite arbitration—which it strongly resisted in its opening brief on appeal—have effectively mooted the appeal from a remedial standpoint. The requested remand for findings submitted by Machinists relating to back pay predicated on a "deal" between T.I.M.E.–DC and Teamsters is frivolous and without merit. In *Wiley v. National Collegiate Athletic Association,* 612 F.2d 473 (10th Cir.1979) (en banc) we held that an actual controversy between parties must exist at all stages of appellate or certiorari review, and not simply at the date the action is initiated; further, that mootness, like ripeness and standing, has its constitutional origin in the "case and controversy" limitations of Article III which insure that courts exercise their power only in cases where true adversaries exist. *Accord: New Mexico ex rel. New Mexico State Highway Dep't v. Goldschmidt,* 629 F.2d 665 (10th Cir.1980); *Cherokee Nation v. Oklahoma,* 461 F.2d 674 (10th Cir.), *cert. denied,* 409 U.S. 1039, 93 S.Ct. 521, 34 L.Ed.2d 489 (1972); *United States v. Levine,* 457 F.2d 1186 (10th Cir.1972).

WE AFFIRM.