Electronically Filed
Intermediate Court of Appeals
28627
30-DEC-2010
12:16 PM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

IN THE MATTER OF THE ARBITRATION BETWEEN
UNITED PUBLIC WORKERS, AFSCME, LOCAL 646, AFL-CIO,
Petitioner-Appellant,
and
STATE OF HAWAIʻI, DEPARTMENT OF TRANSPORTATION;
HAWAIʻI GOVERNMENT EMPLOYEES ASSOCIATION,
AFSCME, LOCAL 152, AFL-CIO (2007-007),
Respondents-Appellees.

NO. 28627

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(SP NO. 07-1-0061)

DECEMBER 30, 2010

FOLEY, PRESIDING JUDGE, LEONARD, and FUJISE, JJ.

OPINION OF THE COURT BY LEONARD, J.

This appeal addresses whether tripartite arbitration
must be ordered to resolve disputes involving two unions
claiming that their employees are entitled to various temporary
work assignments. Petitioner-Appellant United Public Workers,
AFSCME, Local 646, AFL-CIO Union (**UPW**) appeals from the Circuit

Court of the First Circuit's (**Circuit Court**) Final Judgment filed June 29, 2007.[1]

The Circuit Court denied UPW's request to compel a consolidated three-way, or tripartite, arbitration. On appeal, UPW contends that the Circuit Court erred by: (1) misconstruing well-established precedent favoring three-way or tripartite arbitration of jurisdictional claims; (2) misinterpreting and misapplying Hawaii Revised Statutes (**HRS**) § 658A-10, concerning the need to consolidate purportedly ongoing multi-party disputes; (3) abusing its discretion by failing to order tripartite arbitration where there are purportedly conflicting bipartite arbitration awards; and (4) failing to refer the dispute, which UPW charactered as a dispute over arbitrability, to an arbitrator. For reasons discussed below, we affirm the Circuit Court's judgment.

I.  **BACKGROUND**

UPW and Respondent-Appellee Hawaii Government Employees Association, AFSCME, Local 152, AFL-CIO Union (**HGEA**) represent different bargaining units of state employees. UPW is the exclusive bargaining representative of blue collar non-supervisory state employees in bargaining unit 1, as set forth in HRS § 89-6(a)(1). HGEA is the exclusive bargaining representative of blue-collar supervisory state employees in bargaining unit 2, as set forth in HRS § 89-6(a)(2). Both unions' collective bargaining agreements contain broad arbitration provisions, including grievance procedures.

The underlying disputes concern temporary work assignments. Temporary work assignments arise when an employee is absent due to sickness, injury, annual leave, training, or other reasons. The state employer selects another employee to temporarily fill the vacant position. Such assignments provide

_____

[1]    The Honorable Bert I. Ayabe presided.

valuable on-the-job training and may lead to promotional opportunities. Both UPW and HGEA allege their employees are entitled to temporary assignments of bargaining unit 2 supervisory positions.

A.    UPW Grievance:  Hunter Arbitration Award

On June 27, 1996, UPW filed a grievance on behalf of a bargaining unit 1 employee, William Kapuwai.  The grievance alleged that the state Department of Transportation (**DOT**) violated past policy and practice by granting an HGEA employee temporary assignments of the Highway Maintenance Supervisor F-2-05 position (no. 01235), a bargaining unit 2 position in the Windward Landscaping Crew.  UPW alleged that, historically, the DOT had granted temporary assignments of F-1 and F-2 supervisory positions to non-supervisory employees in its bargaining unit. Following bipartite arbitration, Arbitrator Keith Hunter issued an award in UPW's favor.  He determined that the DOT was bound, pursuant to its past practice and collective bargaining agreement, to grant temporary assignments of the F-2-05 supervisory position to UPW employees.  The Circuit Court later confirmed the award.

B.    Petition for Declaratory Ruling from HLRB

On October 20, 1997, the State filed a petition for a declaratory ruling with the Hawaii Labor Relations Board (**HLRB**). The State sought a determination regarding the policy of granting bargaining unit 2 positions to UPW employees without first considering whether HGEA employees were available.  Specifically, the State sought to finally resolve whether such a policy is inconsistent with its management rights under HRS §§ 89-6, 89-9(d), and 89-13.  HGEA and the counties of Honolulu, Hawai'i, Kaua'i, and Maui intervened in the proceeding.  However, the HLRB dismissed the petition, finding there was "no actual controversy between the parties at this stage."  HGEA appealed the dismissal to the Circuit Court, which determined the dispute was not moot

and remanded it for further proceedings. The Hawai'i Supreme Court affirmed that result. <u>Lingle v. Haw. Gov't Emps. Ass'n Local 152</u>, 107 Hawai'i 178, 187, 111 P.3d 587, 596 (2005). On remand, the HLRB suspended the proceeding and ordered the parties to "engage in collective bargaining to attempt to resolve this dispute." It appears that, as of the date of this Opinion, the proceeding remains suspended.

C.    <u>HGEA Grievance:  Uesato Arbitration Award</u>

On December 30, 2003, HGEA filed a grievance against the DOT on behalf of a bargaining unit 2 employee, Rodney Kekaualua. The grievance disputed temporary assignments of the Highway Construction & Maintenance Supervisor II F1-10 position (no. 01349), a bargaining unit 2 position in the Hilo-Hamakua Roadway Maintenance Unit, to a UPW employee. HGEA alleged that the DOT violated its collective bargaining agreement by failing to first consider whether HGEA employees were available to fill that position. After bipartite arbitration, Arbitrator Philip Uesato issued an award in favor of HGEA. He determined that the DOT's alleged past practice of granting temporary assignments of the F1-10 position to UPW employees was not binding on HGEA. However, he carefully limited the prospective relief and merely "cautioned" the DOT to cease employing temporary assignment seniority lists established under the UPW agreement. The Circuit Court of the Third Circuit confirmed the award.

D.    <u>UPW's Class Action Grievance; Motion to Compel</u>
      <u>Consolidated Arbitration</u>

On January 30, 2007, UPW filed a class action grievance alleging continued violations of the DOT's past policy and practice of offering temporary assignments of F-1 and F-2 supervisory positions to UPW employees. In the grievance, UPW referenced the "longstanding multi-party controversy" over temporary assignments.

On February 15, 2007, UPW filed with the Circuit Court a motion to compel consolidated tripartite arbitration between UPW, HGEA, and the DOT. HGEA and the DOT both opposed the motion asserting, *inter alia*, that the HLRB was the proper forum for resolving the dispute. On June 1, 2007, the Circuit Court denied the motion on the ground that "there are no separate arbitration proceedings to consolidate." Judgment was entered on June 29, 2007. UPW filed a timely notice of appeal on June 29, 2007 and an amended notice of appeal on July 2, 2007.

II. **POINTS OF ERROR**

UPW raises the following points of error on appeal:

(1) The Circuit Court erred by misinterpreting and misapplying HRS § 658A-10;

(2) The Circuit Court erred by failing to refer the dispute, which UPW charactered as a dispute over arbitrability, to an arbitrator;

(3) The Circuit Court erred by misconstruing federal case law favoring tripartite arbitration of jurisdictional claims; and

(4) The Circuit Court abused its discretion by failing to order tripartite arbitration where there are conflicting bipartite arbitration awards.

III. **APPLICABLE STANDARDS OF REVIEW**

A trial court's decision whether or not to compel arbitration is a question of law. Koolau Radiology, Inc. v. Queen's Med. Ctr., 73 Haw. 433, 439, 834 P.2d 1294, 1298 (1992). Accordingly, we review that decision de novo, "using the same standard employed by the trial court and based upon the same evidentiary materials 'as were before [it] in determination of the motion.'" Id. at 440, 834 P.2d at 1298 (quoting Feliciano v. Waikiki Deep Water, Inc., 69 Haw. 605, 607, 752 P.2d 1076, 1078 (1988)); accord Yogi v. Haw. Med. Serv. Ass'n, 124 Hawai'i 172, 174, 238 P.3d 699, 701 (App. 2010).

The decision to consolidate arbitration proceedings is discretionary. HRS § 658A-10(a) (2001) ("[T]he court *may* order consolidation . . .") (emphasis added); see Baseden v. State, 174 P.3d 233, 238 (Alaska 2008) (interpreting identical provision); Parker v. McCaw, 24 Cal. Rptr. 3d 55, 63 (Cal. Ct. App. 2005) (same); Biber P'ship, P.C. v. Diamond Hill Joint Venture, LLC, 960 A.2d 774, 777 (N.J. Super. Ct. App. Div. 2008) (same); Unif. Arbitration Act, § 10, comment 3 (2009). Accordingly, we review the Circuit Court's refusal to grant consolidation under the abuse of discretion standard. An abuse of discretion occurs when the trial court "clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 114, 839 P.2d 10, 26 (1992).

IV. **DISCUSSION**

As a threshold matter, both HGEA and the DOT contend that this court lacks jurisdiction over the appeal. HRS § 658A-28(a)(1) (2001) expressly authorizes appeal from orders "denying a motion to compel arbitration." However, the appellees argue that UPW's motion was essentially a motion to consolidate, which is not immediately appealable.

HRS § 658A-7 (2001) governs motions to compel arbitration. UPW's motion to compel consolidated arbitration was made pursuant to that section, among others. HGEA admits it was not engaged in arbitration proceedings at the time of the motion. Indeed, it argues that a court cannot order consolidated arbitration unless there are multiple pending arbitrations. Consolidation is therefore contingent upon the court first compelling arbitration. Because HGEA had no arbitration pending, the core purpose of UPW's motion was to compel arbitration. That it sought a particular form of arbitration – consolidated tripartite arbitration – does not disturb the substance of the

motion. We reject the assertion that the order was solely a denial of a motion for consolidation.[2/] Accordingly, this court has jurisdiction over UPW's appeal.

A. Denial of Consolidation

UPW argues that the Circuit Court erred by interpreting HRS § 658A-10 to require separate, pending arbitration proceedings. It maintains that consolidation is appropriate, even absent pending arbitrations, where there are separate agreements to arbitrate among the parties. We disagree.

Prior to Hawai'i's enactment of the Uniform Arbitration Act, our courts lacked authority to consolidate separate arbitration proceedings where the parties' agreements were silent as to consolidation. See, e.g., Bateman Constr., Inc. v. Haitsuka Bros., Ltd., 77 Hawai'i 481, 486-87, 889 P.2d 58, 63-64 (1995). The Uniform Arbitration Act sought to avoid the inefficiencies, complexities, and jurisdictional conflicts resulting when "common issues of law or fact [are] resolved in multiple fora." Unif. Arb. Act, § 10, comment 1. It therefore provided a default rule empowering courts to consolidate separate arbitrations. Id. This rule was codified at HRS § 658A-10 (emphasis added):

> Consolidation of separate arbitration proceedings.
> (a) Except as otherwise provided in subsection (c), upon motion of a party to an agreement to arbitrate or to an arbitration proceeding, the court may order consolidation of separate arbitration proceedings as to all or some of the claims if:
> > (1) There are separate agreements to arbitrate or separate arbitration proceedings between the same persons or one of them is a party to a separate agreement to arbitrate or a separate arbitration proceeding with a third person;
> > (2) The claims subject to the agreements to arbitrate arise in substantial part from the same transaction or series of related transactions;

---

[2/] The appellees further argue that the order was not appealable because it was not a "final judgment" pursuant to HRS §§ 658A-28(a)(6) or 658A-25(a). However, § 658A-28(a) provides appeals from orders denying a motion to compel arbitration or from final judgments entered pursuant to that chapter. The order need not satisfy both criteria to be appealable.

(3)     The existence of a common issue of law or fact
        creates the possibility of conflicting decisions
        in the separate arbitration proceedings; and
(4)     Prejudice resulting from a failure to
        consolidate is not outweighed by the risk of
        undue delay or prejudice to the rights of or
        hardship to parties opposing consolidation.
     (b)     The court may order consolidation of separate
arbitration proceedings as to some claims and allow other
claims to be resolved in separate arbitration proceedings.
     (c)     The court may not order consolidation of the
claims of a party to an agreement to arbitrate if the
agreement prohibits consolidation.

UPW argues that the disjunctive "or" in subsection (a)(1) authorizes consolidation where there are separate agreements to arbitrate between the same persons or with a third person, even if there are no separate arbitration proceedings pending.  However, this argument ignores the plain language of the provision.

HRS § 658A-10 authorizes consolidation of *separate arbitration proceedings* when certain conditions are met.  Those conditions are designed to enable consolidation when there is an adequate nexus and closely-related issues between multiple proceedings.  Thus, HRS § 658A-10(a)(1) sets forth a necessary, but not sufficient, condition.  Where there are no separate proceedings to consolidate, a fundamental prerequisite is not met, and this provision is inapplicable.[3]

---

[3]     The commentary to section 10 of the Uniform Arbitration Act confirms this interpretation.  Comment 5 notes that "[w]hether consolidation is ordered or denied, the arbitrations will likely continue -- either separately or in a consolidated proceeding."  Unif. Arb. Act, § 10, comment 5. As a result, appeal is not available as it would merely "delay the arbitration process."  Id.  If this section contemplated initiating a new consolidated proceeding where none existed before, the fundamental character of the provision, including its appealability, arguably would be altered.  The commentary further notes that under subsection (a)(4), undue delay or hardship may result "where, for example, one or more separate arbitration proceedings have already progressed to the hearing stage."  Id. at comment 3.  The provision does not contemplate consolidating proceedings after they have already been concluded.

In addition, the language of subsection (a)(1) regarding "agreements to arbitrate" was intended to cover separate arbitration proceedings involving third-party beneficiaries or guaranties that incorporate the arbitration provisions of the underlying contract.  Id. at comment 4.  In
                                                        (continued...)

UPW cites to a number of cases for the proposition that "[c]ourts have found consolidation consistent with state laws advancing the use of arbitration in the context of multiparty disputes." However, all of those cases involved multiple *pending* arbitrations. New England Energy Inc. v. Keystone Shipping Co., 855 F.2d 1, 3 (1st Cir. 1988) (applying Massachusetts arbitration law to consolidate pending proceedings); Rio Energy Int'l, Inc. v. Hilton Oil Trans., 776 F. Supp. 120, 121-22 (S.D.N.Y. 1991) (affirming consolidation of pending proceedings involving common questions of law and fact); Cable Belt Conveyors, Inc. v. Alumina Partners of Jam., 669 F. Supp. 577, 577-79 (S.D.N.Y. 1987) (same); Slutsky-Peltz Plumbing & Heating Co., Inc. v. Vincennes Cmty. Sch. Corp., 556 N.E.2d 344, 345, 347 (Ind. Ct. App. 1990) (same); Grover-Dimond Assocs. v. Am. Arb. Ass'n, 211 N.W.2d 787, 788, 790 (Minn. 1973) (affirming joint arbitration where owner brought related grievances against architect and contractor); Exber, Inc. v. Sletten Constr. Co., 558 P.2d 517, 519-20 (Nev. 1976) (affirming consolidation of pending proceedings between multiple parties); Symphony Fabrics Corp. v. Bernson Silk Mills, Inc., 190 N.E.2d 418, 419 (N.Y. 1963) (same); Sullivan Cnty. v. Edward L. Nezelek, Inc., 366 N.E.2d 72, 73 (N.Y. 1977) (same); Children's Hosp. of Phila. v. Am. Arb. Ass'n, 331 A.2d 848, 849-50 (Pa. Super. Ct. 1974) (same); Plaza Dev. Servs. v. Joe Harden Builder, Inc., 365 S.E.2d 231, 232-33 (S.C. Ct. App. 1988) (same). UPW has not cited, and we have not found, any cases interpreting the Uniform Arbitration Act to allow consolidation of arbitration proceedings where only one proceeding is pending.

We therefore conclude that the Circuit Court did not err in declining to order consolidated arbitration.

---

[3]/(...continued)
such cases, third-party beneficiaries or signatories to guaranties may invoke the appropriate arbitration agreement. Id.; see, e.g., Compania Espanola de Petroleos, S.A. v. Nereus Shipping, S.A., 527 F.2d 966 (2d Cir. 1975).

B.    Tripartite Arbitration Arguments

UPW contends that the Circuit Court erred in failing to compel tripartite arbitration, arguing that the Circuit Court improperly ignored the body of federal case law concerning tripartite arbitration for this type of labor dispute.  We conclude, however, that the Circuit Court did not err in declining to compel arbitration at the request of a nonsignatory to the relevant arbitration agreement and in the wake of confirmed bipartite arbitration awards.

1.    Applicable Hawaiʻi Law

UPW urges us to apply federal common law regarding tripartite arbitration.  That body of law is not binding on this court.  Indeed, all parties agree that Hawaiʻi collective bargaining law (HRS Chapter 89) and the Hawaiʻi Uniform Arbitration Act (HRS Chapter 658A) govern the present dispute. Thus, we first look to Hawaiʻi law on this issue.

HRS Chapter 658A provides a statutory mechanism for compelling arbitration.  Under HRS § 658A-7,[4/] if the court finds

---

[4/]    HRS § 658A-7 provides:

> Motion to compel or stay arbitration. (a)  On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
> (1)    If the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and
> (2)    If the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.
> (b)    On motion of a person alleging that an arbitration proceeding has been initiated or threatened but that there is no agreement to arbitrate, the court shall proceed summarily to decide the issue. If the court finds that there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate.
> (c)    If the court finds that there is no enforceable agreement, it shall not, pursuant to subsection (a) or (b), order the parties to arbitrate.
> (d)    The court shall not refuse to order arbitration because the claim subject to arbitration lacks merit or
> (continued...)

that "there is an enforceable agreement to arbitrate, it shall order the parties to arbitrate." HRS § 658A-7(b).

When faced with a motion to compel arbitration, the court must generally inquire into: (1) whether there is a valid agreement to arbitrate; and (2) whether the dispute falls within the scope of that agreement. Koolau Radiology, Inc., 73 Haw. at 445, 834 P.2d at 1300. When agreements reserve questions of arbitrability for the arbitrator, as they do here,[5] the court may only consider the first prong. Bateman Constr., Inc., 77 Hawaiʻi at 485-86, 889 P.2d at 62-63; see also Bronster v. United Public Workers Local 646, 90 Hawaiʻi 9, 14-15, 975 P.2d 766, 771-72 (1999).

_____

[4] (...continued)
grounds for the claim have not been established.
        (e)   If a proceeding involving a claim referable to arbitration under an alleged agreement to arbitrate is pending in court, a motion under this section shall be made in that court. Otherwise a motion under this section shall be made in any court as provided in section 658A-27.
        (f)   If a party makes a motion to the court to order arbitration, the court on just terms shall stay any judicial proceeding that involves a claim alleged to be subject to the arbitration until the court renders a final decision under this section.
        (g)   If the court orders arbitration, the court on just terms shall stay any judicial proceeding that involves a claim subject to the arbitration. If a claim subject to the arbitration is severable, the court may limit the stay to that claim.


[5]     UPW's collective bargaining agreement provides:

        In the event the Employer disputes the arbitrability of a grievance the Arbitrator shall determine whether the grievance is arbitrable prior to or after hearing the merits of the grievance. If the Arbitrator decides the grievance is not arbitrable, the grievance shall be referred back to the parties without decision or recommendation on its merits.

Similarly, HGEA's collective bargaining agreement provides:

        If the Employer disputes the arbitrability of any grievance, the Arbitrator shall first determine whether the Arbitrator has jurisdiction to act; and if the Arbitrator finds that the Arbitrator has no such power, the grievance shall be referred back to the parties without decision or recommendation on its merits.

UPW argues that whether it may compel arbitration between HGEA and the DOT is a question of arbitrability, properly reserved for the arbitrator under both agreements. This argument confuses two separate issues. One is a question of arbitrability, *i.e.*, whether the underlying dispute falls within the scope of HGEA's arbitration agreement. See Univ. of Haw. Prof'l Assembly v. Univ. of Haw., 66 Haw. 207, 210, 659 P.2d 717, 719 (1983). This proposition presupposes, however, that UPW has standing to invoke HGEA's agreement. Under Koolau, we must first determine whether UPW may invoke an arbitration agreement to which it is not a party. Koolau Radiology, Inc, 73 Haw. at 445, 834 P.2d at 1300; see Bronster, 90 Hawai'i at 15, 975 P.2d at 772 ("[N]o agreement can divest the court of the authority to address the first [Koolau prong].").

Although public policy favors arbitration as a means of resolving disputes, arbitration is ultimately a matter of contract. Sher v. Cella, 114 Hawai'i 263, 267, 160 P.3d 1250, 1254 (App. 2007). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." Id. (internal quotation marks and citation omitted). To warrant compelling arbitration, there must be "an underlying agreement *between the parties*," *i.e.*, the party seeking to compel arbitration and the opposing party. Luke v. Gentry Realty, Ltd., 105 Hawai'i 241, 247, 96 P.3d 261, 267 (2004) (emphasis added; internal quotation marks and citation omitted). Here, indisputably, HGEA and the DOT have a valid agreement to arbitrate disputes that arise between the state employer and HGEA employees. The agreement does not contemplate arbitration for disputes with UPW, a nonsignatory.

Generally, parties who are not signatories to an arbitration agreement may not compel the signatories to arbitrate. Sher, 114 Hawai'i at 267, 160 P.3d at 1254; Luke, 105 Hawai'i at 247, 96 P.3d at 267. A few limited exceptions exist.

A nonsignatory agent may invoke an arbitration agreement in two circumstances:

> First, when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. Second, when the signatory to the contract containing a[n] arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.

Luke, 105 Hawaiʻi at 248, 96 P.3d at 268 (citation omitted). UPW does not fit within either of those exceptions.

Moreover, even if we view the situation in the reverse -- as UPW seeking to compel HGEA, a nonsignatory, to arbitrate under UPW's agreement -- we reach the same result. Though the court in Luke did not address possible exceptions to that rule, it pointed to a Second Circuit case recognizing five exceptions under which a court may bind nonsignatories to arbitration agreements. Id. at 248 n.11, 96 P.3d at 268 n.11. The exceptions fall under the following theories: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." Thomson-CSF, S.A. v. Am. Arb. Ass'n, 64 F.3d 773, 776 (2d Cir. 1995). None of them is applicable here.

Under applicable Hawaiʻi law, the Circuit Court did not err in refusing to compel tripartite arbitration.

2.    Federal Case Law

UPW does not point to any state courts that have adopted the federal approach, and we have discovered none. Moreover, as discussed above, the Uniform Arbitration Act provides ample mechanisms for compelling tripartite arbitration via consolidation when separate proceedings are pending. HRS §§ 658A-7, 658A-10. There is no gap in relevant state law that would require resort to federal common law. See Price v. Obayashi Haw. Corp., 81 Hawaiʻi 171, 181, 914 P.2d 1364, 1374 (1996) ("[W]here Hawaiʻi case law and statutes are silent, this

court can look to parallel federal law for guidance."). Nevertheless, we have carefully considered UPW's arguments.

Federal courts have generally adopted a favorable approach toward tripartite arbitration of jurisdictional disputes between labor unions. "Jurisdictional disputes" arise when two or more unions each claim to be entitled, under their respective collective bargaining agreements, to the same work. Carey v. Westinghouse Elec. Corp., 375 U.S. 261, 263 (1964). Tripartite arbitration may be appropriate as a means to avoid conflicting awards that grant the same work to multiple unions. Retail, Wholesale & Dep't Store Union, Local 390 v. Kroger Co., 927 F.2d 275, 278 (6th Cir. 1991) (**Kroger II**); Local No. 850, Int'l Ass'n of Machinists & Aerospace Workers v. T.I.M.E.-DC, Inc., 705 F.2d 1275, 1276-77 (10th Cir. 1983). Tripartite arbitration is often more "practicable, economical and convenient for the parties and the arbitrator" because it avoids the inefficiencies of duplicate proceedings. Columbia Broad. Sys., Inc. v. Am. Recording & Broad. Ass'n, 414 F.2d 1326, 1329 (2d Cir. 1969) (citation omitted).

The arbitration awards at issue here did not concern the same work, but rather involved two different positions in different units and on different islands. The Hunter award concerned an F-2 position, no. 01235, in the Windward Landscaping Crew on Oʻahu. The Uesato award concerned an F1-10 position, no. 01349, in the Hilo-Hamakua Roadway Maintenance Unit on Hawaiʻi. Each award granted prospective relief for temporary assignments of those positions only. The Uesato award cautioned the DOT against utilizing UPW seniority lists in granting temporary assignments of bargaining unit 2 positions. However, it did not order the DOT to cease employing the lists. The awards are not strictly in conflict; it is possible for the DOT to fully comply

with both.[6/]   The fundamental purpose of tripartite arbitration –
to avoid conflicting arbitration awards that lock the employer in
an impossible position – is not met here.  See Kroger II, 927
F.2d at 278 ("[T]he mere possibility of exposure to inconsistent
liabilities" does not warrant tripartite arbitration); Columbia
Broad. Sys., Inc., 414 F.2d at 1329.

A second purpose of tripartite arbitration is to
finally resolve disputes that would otherwise remain perpetually
mired in a jurisdictional no man's land.  See Transp.-Commc'n
Emps. Union v. Union Pac. R.R. Co., 385 U.S. 157, 161-62 (1966).
Here, the State sought an alternative resolution:  a petition for
a declaratory ruling now pending with the HLRB.   The HLRB's
ruling, or further collective bargaining, could finally resolve
the controversy.

Finally, the federal case law on which UPW relies
simply does not support compelling tripartite arbitration in this
case.  The United States Supreme Court laid the framework for
tripartite arbitration in Union Pacific.  There, a telegraphers'
union referred its grievance over a jurisdictional dispute to the
Railroad Adjustment Board for arbitration pursuant to the Railway
Labor Act.  385 U.S. at 158.  The clerks' union, which claimed it
was entitled to the same work assignments, declined to
participate pursuant to a policy of the Railway Labor Executives'
Association.  Id. at 158-59, 159 n.2.  The Supreme Court granted
certiorari "in order to settle doubts about whether the
Adjustment Board must exercise its exclusive jurisdiction to

---

[6/]      UPW also highlights three previous awards concerning temporary
assignments of bargaining unit 2 positions to UPW employees.  However, these
also are not in strict conflict as they resolved disputes over different
positions in different units.  The King award concerned the Bridge Maintenance
Supervisor F1-11 position, no. 22788, in the Bridge Maintenance Subunit on
Oʻahu.  The Woo award concerned the General Maintenance and Repair Supervisor
position in the Grounds & General Services Subunit of the Maintenance Section
of the Airports Division.  Finally, the Bryan award concerned the lead vehicle
repair supervisor position in the Automotive Equipment Services Division of
the City & County Public Works Department.  Each award limited prospective
relief to the positions at issue.

settle disputes like this in a single proceeding with all disputant unions present." Id. at 160. It held that the Adjustment Board was required to do so. Id.

The Railway Adjustment Board derived its authority from a statutory mandate to "provide for the prompt and orderly settlement of all disputes." Id. at 162 (internal quotation marks and citation omitted). It could not fulfill this mandate if limited to the "merry-go-round situation" of conflicting bipartite claims. Id. The Court remanded the case to the Board and directed it to grant the clerks' union a second opportunity to join the arbitration. Id. at 165-66. If the union again declined, the Board was to enter a binding award resolving the entire dispute. Id. In rendering its decision, the Board was directed to consider other contracts "between the railroad and any other union involved in the overall dispute." Id. at 166 (internal quotation marks and citation omitted).

In the instant case, the arbitrator does not enjoy such broad authority to finally settle all disputes. Rather, both agreements limit the arbitrator's authority to settling disputes under each respective agreement. The precedential value of Union Pacific is therefore slim. See Louisiana-Pac. Corp. v. Int'l Bhd. of Elec. Workers Local Union 2294, 600 F.2d 219, 224 (9th Cir. 1979) (noting that collective bargaining agreements often do not grant arbitrators "the kind of expansive purview given to the Railroad Adjustment Board").

Union Pacific paved the way for a trend in federal common law favoring tripartite arbitration of jurisdictional disputes. See, e.g., U.S. Postal Serv. v. Am. Postal Workers Union, 893 F.2d 1117, 1121 (9th Cir. 1990) (noting trend). However, the circuits have not reached a consensus as to precisely when such arbitration is appropriate. We have found no cases extending tripartite arbitration so far as requested in this case – against the will of the second union *and* the

employer, and in the wake of confirmed bipartite arbitration awards.

In determining when tripartite arbitration is appropriate, federal courts have weighed two key concerns: preserving the finality of bipartite arbitration awards and honoring the parties' arbitration agreements.

The federal circuit courts are divided over whether they may compel tripartite arbitration despite the existence of bipartite arbitration awards. A primary purpose of compelling tripartite arbitration is to avoid the inefficiencies and potential inconsistencies of duplicate proceedings. See Kroger II, 927 F.2d at 280-82; Columbia Broad. Sys., Inc., 414 F.2d at 1329. The value of arbitrating labor disputes often lies in obtaining final, binding decisions. At least two circuits – the Fifth and the Ninth – have held that tripartite arbitration is not appropriate where final bipartite awards have already been rendered. Louisiana-Pacific Corp., 600 F.2d at 226; U.S. Postal Serv., 893 F.2d at 1121; Local 1351 Int'l Longshoremens Ass'n v. Sea-Land Serv. Inc., 214 F.3d 566, 572-73 (5th Cir. 2000). The Sixth, Tenth, and Second Circuits have rejected that approach. Emery Air Freight, Corp. v. Int'l Bhd. of Teamsters, Local 295, 185 F.3d 85, 92 (2d Cir. 1999); Kroger II, 927 F.2d at 280; T.I.M.E.-DC, Inc., 705 F.2d at 1277-78. However, on closer examination, those cases are distinguishable.

UPW hinges its argument on the factors articulated in Emery. There, the issue on appeal was whether the district court had abused its discretion in *denying* the employer's request to compel tripartite arbitration. Emery, 185 F.3d at 92. Although both unions had obtained arbitration awards, neither had yet confirmed them. Id. at 87-88. The Second Circuit affirmed the denial, but declined to adopt a hardline rule according dispositive status to the existence of final bipartite awards. Id. at 91-92. It reasoned that circumstances may arise where the

parties could not have anticipated a second arbitration or conflicting awards. Id. at 92. In such cases, a blanket rule would frustrate the objectives of all parties. Id. The court instead adopted a "flexible, fact-based approach that affords full play to the discretion and equitable instinct of the district court." Id. It outlined a variety of factors for consideration -- essentially a balancing test. Id. at 91. Relevant factors include the breadth of arbitration provisions, the existence or likelihood of conflicting arbitration awards, the compatibility of arbitration procedures between the two agreements, the nature of relief granted, and the employer's fault in failing to anticipate the jurisdictional conflict. Id.

This approach is by no means widely adopted. We have found no cases outside the Second Circuit expressly adopting the Emery balancing test. Nonetheless, even if we were to apply it in this case, we would find no reason to disturb the Circuit Court's discretion. The arbitration provisions at issue do not provide for jurisdictional disputes, and HGEA's agreement outlines grievance procedures that were not invoked. The awards were not entirely inconsistent, and the prospective relief was limited so as to avoid placing the DOT in an impossible position. Moreover, the parties could have anticipated the dispute and contracted around it.[1] Thus, the balance of factors weighs against disturbing the Circuit Court's conclusion.

The Tenth Circuit addressed the issue of bipartite awards in T.I.M.E.-DC. In that case, competing unions obtained conflicting arbitration awards regarding the same work assignments. 705 F.2d at 1275-76. The employer was "in the impossible position of having to comply with both awards coextensively." Id. at 1276. When the first union instituted an action to enforce its award, the district court ordered all

_____

[1] Indeed, they may still do so, as the HLRB ordered the parties to engage in collective bargaining.

parties to submit to tripartite arbitration. Id. The first union appealed. Id. The Tenth Circuit affirmed on the basis that the first union "effectively mooted the appeal" in its reply brief by adopting the stance of the second union and employer that tripartite arbitration was appropriate. Id. at 1278. Here, by contrast, both HGEA and the DOT remain opposed to tripartite arbitration.

The Sixth Circuit considered the weight of bipartite awards in a set of cases involving the same employer. It held that "[b]efore tripartite arbitration may be ordered, the parties involved first must have a duty to engage in separate bipartite arbitration over the subject matter involved." United Indus. Workers v. Kroger Co., 900 F.2d 944, 947 (6th Cir. 1990) (**Kroger I**). In that case, however, the second union had not initiated its grievance process. Id. at 946. The court did not address the situation at bar, where the parties have concluded bipartite arbitration and obtained binding awards.

In Kroger II, the Sixth Circuit declined to rest its decision simply on the existence of bipartite awards. Kroger II, 927 F.2d at 280. There, the bipartite awards were fundamentally inconsistent, as they mandated the employer to offer the same work to both unions. Id. at 281. Because the employer could not possibly comply with both awards, the court reasoned that the policy of according finality to arbitration awards would be disserved "by blindly ordering enforcement of conflicting arbitration awards rendered in separate proceedings, neither of which had the ability to bind all interested parties." Id. at 280. Here, by contrast, the awards do not place the DOT in an impossible position of having to select which award to comply with to the exclusion of the other. And, unlike the employer in Kroger II, the DOT remains firmly opposed to tripartite

arbitration.  The court's concerns in <u>Kroger II</u> are therefore not present here.[8/]

UPW relies particularly on <u>Office & Prof'l Emps. Int'l Union v. Sea-Land Serv., Inc.</u>, 210 F.3d 117 (2d Cir. 2000), for the proposition that tripartite arbitration is appropriate where bipartite awards have been issued.  There, competing unions both claimed the same work assignments and obtained conflicting arbitration awards.  <u>Id.</u> at 118.  The first union, OPEIU, confirmed its arbitration award in a district court of New York. <u>Id.</u> at 119.  When the second union, ILA, sought to confirm its arbitration award in a Texas court, the court instead ordered both unions and their employer to participate in tripartite arbitration.  <u>Id.</u> at 120-21.  After losing in tripartite arbitration, OPEIU sought to enforce its original arbitration award in the New York court pursuant to Rule 70 of the Federal Rules of Civil Procedure.  <u>Id.</u> at 121.  The New York court declined to enforce the award.  <u>Id.</u>  On appeal, the sole issue was whether the New York court had authority to decline

_____

[8/]    The court in <u>Kroger II</u> also expressed dissatisfaction with the Ninth Circuit's reasoning in <u>Louisiana-Pacific</u>.  927 F.2d at 280.  The Ninth Circuit held that <u>Union Pacific</u> was inapplicable to a dispute akin to the one at bar.  <u>Louisiana-Pacific Corp.</u>, 600 F.2d at 224.  It reasoned that the Railway Adjustment Board in <u>Union Pacific</u> enjoyed broad statutory authority to resolve jurisdictional disputes, whereas collective bargaining agreements rarely grant arbitrators that authority.  <u>Id.</u>  However, the court acknowledged that the employer could have compelled tripartite arbitration while separate arbitration proceedings were pending.  <u>Id.</u> at 225-26.  The <u>Kroger II</u> court opined that this reasoning was contradictory.  927 F.2d at 280.  It alleged that the "obvious thrust" of the Ninth Circuit's distinction between statutory and contractual authority was that "a party should not be compelled to submit to tripartite arbitration unless he has expressly assumed that obligation in his contract."  <u>Id.</u>

<u>Kroger II</u>'s criticism misses the mark.  The Ninth Circuit did not take the position that tripartite arbitration is only available when specific contractual provisions allow it.  Nor is that position a necessary step in the Ninth Circuit's logic.  Rather, it merely recognized that where the agreements do not specifically provide for tripartite arbitration, the parties may, during the pendency of separate proceedings, seek a court order of consolidation under applicable federal law.  <u>Louisiana-Pacific Corp.</u>, 600 F.2d at 225-26.  This is consistent with the view that the arbitrator usually does not have contractual authority to order such arbitration.  It is also consistent with the Ninth Circuit's deference to the parties' agreements regarding the finality of arbitration awards.

enforcement of the first arbitration award. Id. at 123-24. The Second Circuit did not address whether the Texas order compelling tripartite arbitration was appropriate. Id.; see Sea-Land Serv. Inc., 214 F.3d at 572. UPW's reliance on this case is therefore misplaced.

A few months later, the Fifth Circuit addressed the Texas order, squarely facing the issue that the Second Circuit had sidestepped. Sea-Land Serv., Inc., 214 F.3d at 572. It placed great weight upon the finality of the judgment confirming OPEIU's original arbitration award. Id. The Texas court's order compelling tripartite arbitration undermined that finality, violating principles of collateral estoppel and res judicata. Id. The court concluded that compelling tripartite arbitration "was inappropriate in the wake of the final judgment which OPEIU had obtained." Id. at 573.

The Ninth Circuit also preserved the binding character of arbitration awards in Louisiana-Pacific. There, two unions obtained conflicting arbitration awards granting each back-pay for the same work assignment. 600 F.2d at 220-21. The first union confirmed its award, though the employer unsuccessfully sought to compel tripartite arbitration. Id. at 221. When the second union sought to confirm its award, the employer again sought tripartite arbitration and appealed the trial court's denial. Id. at 221-22. The Ninth Circuit held that the employer was bound by the final character of both awards, as it had agreed under its respective collective bargaining agreements. Id. at 225-26. Although requiring it to pay both unions for the same work was arguably harsh, it ultimately bore the risk of such a scenario. Id. The employer could have anticipated the problem by incorporating a pertinent contractual provision or by compelling tripartite arbitration before final awards were rendered. Id.

Here, as in <u>Louisiana-Pacific</u> and <u>Sea-Land</u>, the parties' bargained-for expectations surrounding the finality of arbitration awards mitigate against compelling tripartite arbitration. Both unions obtained confirmation of their arbitration awards, converting them into enforceable judgments. <u>See Mikelson v. United Servs. Auto. Ass'n</u>, 122 Hawai'i 393, 395, 227 P.3d 559, 561 (App. 2010) (recognizing that confirmation of arbitration awards converts them into enforceable judgments). Such awards may only be vacated, modified, or corrected in accordance with chapter 658A. HRS § 658A-22 (2001). As a result, compelling tripartite arbitration would undermine the finality that all parties contracted for in their arbitration agreements.

A related concern surrounds upholding the grievance procedures embodied in the unions' collective bargaining agreements. A number of courts have held that tripartite arbitration may not be compelled absent a "contractual nexus," *i.e.,* a contractual duty to engage in a bipartite arbitration over the matter. <u>Kroger I</u>, 900 F.2d at 947; <u>U.S. Postal Serv.</u>, 893 F.2d at 1120. In <u>Kroger I</u>, the employer, concerned about the possibility of conflicting arbitration awards, sought to compel a second union to join in tripartite arbitration. 900 F.2d at 945-46. Although the first union had invoked its arbitration agreement by first following the contractual grievance procedure, neither the second union nor the employer had done so with respect to the second union's contract. <u>Id.</u> Under the terms of its collective bargaining agreement, the second union had only consented to arbitration where the four steps for processing a grievance had first been followed. <u>Id.</u> at 947. Because those steps had not been followed, the arbitration provision was not triggered and there was no contractual nexus for either bipartite or tripartite arbitration. <u>Id.</u>; <u>see also</u> <u>U.S. Postal Serv. v. Nat'l Rural Letter Carriers' Ass'n</u>, 959 F.2d 283, 285, 287 (D.C.

Cir. 1991); Local 7-0018, Paper, Allied-Indus., Chem. & Energy Workers (PACE) Int'l Union v. Wis. Gas Co., 410 F. Supp. 2d 769, 774 (E.D. Wis., 2006).

In Kroger II, Retail Union filed a grievance and obtained an award in its favor. Kroger II, 927 F.2d at 276. The Teamsters union subsequently obtained a conflicting award in its favor. Id. Both unions then sought to confirm their arbitration awards. Id. at 277. Instead of confirming either award, the court ordered tripartite arbitration. Id. On appeal, the Sixth Circuit concluded that because the Teamsters had filed an arbitrable grievance, a contractual nexus was present. Id. at 279.

The Ninth Circuit took an arguably narrower approach to the "contractual nexus" requirement in U.S. Postal Serv., 893 F.2d 1117. There, one union initiated arbitration against the employer. Id. at 1119. A second union sought to intervene, but the arbitrator refused because no specific provision in the agreement permitted intervention. Id. In an action initiated by the employer to compel tripartite arbitration, the court recognized that "[t]ripartite arbitration is, in effect, a consolidation of two individual, consensual arbitrations." Id. at 1120. By seeking to intervene, the second union consented to arbitration on the merits of the dispute. Id. The court confirmed the holding of Louisiana-Pacific that parties must seek tripartite arbitration "before receiving conflicting awards." Id. at 1121.

Here, no grievance is pending between HGEA and the DOT. Unlike the arbitration awards in Kroger II, which were not confirmed, both awards were confirmed in this case. As in Kroger I, HGEA did not seek to invoke its arbitration agreement with regard to UPW's class grievance. The contractual nexus was lacking, and tripartite arbitration was not appropriate.

Moreover, in <u>Kroger II</u>, the arbitration awards were fundamentally inconsistent: each mandated assignment of the same work to different unions. 927 F.2d at 281. Unlike <u>Louisiana-Pacific</u>, the court could not possibly enforce both awards. <u>Id.</u> Yet absent tripartite arbitration, the union that "won the race" in obtaining the first award would prevail solely on that basis. <u>Id.</u> (discussing Tenth Circuit's <u>T.I.M.E.-DC, Inc.</u> case). The court therefore took a broader approach than the Ninth Circuit by compelling tripartite arbitration despite the existence of bipartite awards. <u>Id.</u> at 281-82. Here, because the arbitration awards are not mutually unenforceable, the concerns underlying <u>Kroger II</u> are not present.

Accordingly, we reject UPW's argument that the Circuit Court erred in failing to apply the federal common law in this case.

V.   **CONCLUSION**

For these reasons, we conclude that the Circuit Court did not err in denying UPW's motion to compel tripartite arbitration. We affirm the Circuit Court's June 29, 2007 Judgment.

On the briefs:

Herbert R. Takahashi
Danny J. Vasconcellos
Rebecca L. Covert
(Takahashi Vasconcellos &
 Covert)
for Petitioner-Appellant

James E. Halvorson
Claire W.S. Chinn
Deputies Attorney General
for Respondent-Appellee
State of Hawaiʻi, Department
of Transportation

Debra A. Kagawa
for Respondent-Appellee
Hawaiʻi Government Employees
Association, AFSCME, Local 152, AFL-CIO