**Electronically Filed
Intermediate Court of Appeals
CAAP-20-0000286
15-AUG-2024
07:56 AM
Dkt. 111 SO**

NOS. CAAP-20-0000286 AND CAAP-20-0000444

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


In Re MOLOAA FARMS LLC, Claimant-Appellant, v.
ASSOCIATION OF APARTMENT OWNERS OF MOLOAA HUI I;
PAUL C. HUBER, individually and as President of
the Association of Unit Owners of Moloaa Hui I;
ASSOCIATION OF APARTMENT OWNERS OF MOLOAA HUI II;
NED Y. WHITLOCK, as President of the Association of
Unit Owners of Moloaa Hui II; MOLOAA HUI LANDS, INC.;
CANDACE L. STRONG, individually; and ERIC M. STRONG,
President and Chief Executive Officer of Moloaa Hui
Lands, Inc., Respondents-Appellees

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CSP-20-0000004)


SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge,
and Wadsworth and Nakasone, JJ.)

These consolidated appeals arise from a special proceeding in the Circuit Court of the Fifth Circuit (**Circuit Court**)[1] that terminated an arbitration before the American Arbitration Association (**AAA**). Claimant-Appellant Moloaa Farms, LLC (**Moloaa Farms**) appeals from the following Circuit Court orders granting the identified motions and substantive joinder filed by Respondents-Appellees Association of Apartment Owners of Moloaa Hui I (**AOAO MH I**); Paul C. Huber (**Huber**), individually and as President of the Association of Unit Owners of Moloaa Hui I; Association of Apartment Owners of Moloaa Hui II (**AOAO MH II**); Ned Y. Whitlock (**Whitlock**), as President of the Association of

---

[1] The Honorable Kathleen N.A. Watanabe presided.

Unit Owners of Moloaa Hui II; and Candace L. Strong (**C. Strong**), individually (collectively, **Respondents-Appellees**):

(1)  the March 18, 2020 "Order Granting: (1) [AOAO MH I] and . . . Huber's Motion to Stay Arbitration and/or Terminate Arbitration Regarding [Moloaa Farms'] Demand for Arbitration in AAA Case: 01-19-0002-2645, Filed on January 27, 2020; and (2) [AOAO MH II] and . . . Whitlock's Substantive Joinder to [AOAO MH I] and . . . Huber's Motion to Stay Arbitration and/or Terminate Arbitration Regarding [Moloaa Farms'] Demand for Arbitration in AAA Case: 01-19-0002-2645 (Filed 1/27/2020), Filed on February 28, 2020";

(2)  the March 18, 2020 "Order Granting '. . . Huber, Individually's, Motion to Determine Existence and Validity of Agreement to Arbitrate Re: "Demand for Arbitration," Dated October 7, 2019, in [AAA] Case No. 01-19-0002-2645,' Filed February 18, 2020";

(3)  the March 19, 2020 "Order Granting . . . [C.] Strong's Motion to Terminate Arbitration Against Her Filed, February 11, 2020";[2]

(4)  the June 12, 2020 "Order Granting '. . . Huber, Individually's, Motion for an Award of Attorneys' Fees and Costs,' Filed April 1, 2020";

(5)  the June 15, 2020 "Order Granting in Part [AOAO MH I] and . . . Huber's Motion for Attorney's Fees and Costs Filed on April 3, 2020";

(6)  the June 16, 2020 "Order Granting . . . [C.] Strong's Motion for Attorneys' Fees and Costs"; and

(7)  the June 22, 2020 "Order Granting [AOAO MH II's] and . . . Whitlock's Motion for Award of Attorneys' Fees Incurred in Successful Defense of Demand for Arbitration Filed by [Moloaa Farms] in

---

[2]    We refer to orders (1) through (3) as the **Termination Orders**.

2

AAA Case No. 01-19-0002-2645 (Filed 4/6/2020)."[3]

In October 2019, Moloaa Farms initiated an arbitration proceeding against Respondents-Appellees and others (collectively, **Respondents**), seeking declaratory relief and damages for, among other things, the alleged breach of two agreements, both of which contain arbitration provisions – a Bargain Sale Option Agreement (**Option Agreement** or **Agreement**), dated February 10, 1997, for the purchase and development of certain subdivided agricultural land in Moloaʻa, Kauaʻi (the **Moloaa Hui Lands**), and a Declaration of Covenants, Conditions and Restrictions (**Declaration**), recorded on March 13, 1997, in the State of Hawaiʻi Bureau of Conveyances. Moloaa Farms contends that Respondents are signatories (or successors in interest) to one or both agreements, are contractually required to provide Moloaa Farms with, among other things, access to a common water system as required for the development of certain land subject to those agreements, and have failed to do so.

After Moloaa Farms submitted the dispute to arbitration, AOAO MH I, Huber, AOAO MH II, Whitlock, and C. Strong moved or joined in a motion to stay or terminate the arbitration pursuant to Hawaii Revised Statutes (**HRS**) Chapter 658A (the **Termination Motions**). The Circuit Court granted the Termination Motions and terminated the arbitration. In doing so, the Circuit Court found and concluded that:

1. "There is no arbitration agreement to which Huber [or C. Strong] is a party, that would compel Huber [or C. Strong] to arbitrate disputes with [Moloaa Farms]";

2. "The subject matter of the dispute [upon] which [Moloaa Farms] bases its arbitration demand is not an arbitrable dispute, as to Huber [or C. Strong]";

3. "The Demand for Arbitration ('Demand') in AAA Case: 01-19-0002-2645 seeks to adjudicate a dispute between private individuals over water

---

[3] We refer to orders (4) through (7) as the **Fee Orders**.

rights in the agricultural district of Moloaa on the island of Kaua'i, and pursuant to HRS § 664-33, this Court 'shall hear and determine all controversies respecting rights of private way and water rights, between private individuals";

4.     "There is no valid and enforceable arbitration provision or agreement between [Moloaa Farms] and AOAO MH I or AOAO MH II, and/or their officers in their official capacities, that would compel the arbitration of the claims and issues set forth in the Demand"; and

5.     "The subject matter of the dispute upon which [Moloaa Farms] bases its Demand is not arbitrable against AOAO MH I and AOAO MH II, and/or their officers in their official capacities."

After the Circuit Court granted the Termination Motions, it issued several orders granting Respondents' motions for attorneys' fees and costs (**Fee Motions**).

On appeal, Moloaa Farms contends that the Circuit Court erred in granting the Termination Motions because:  (1) Respondents "waived their right to seek a judicial determination as to the existence and scope of the arbitration agreements under HRS § 658A-6"; (2) Respondents "failed to serve their motions and joinder as required by HRS § 658A-5, thereby depriving the [C]ircuit [C]ourt of jurisdiction"; (3) Respondents "are parties to and bound by the Option Agreement and/or Declaration as signatories or successors in interest"; (4) "[t]he subject matter of dispute is arbitrable under both the Option [Agreement] and Declaration"; and (5) the dispute "is not about water rights but rather the terms and conditions upon which [a portion of the Moloaa Hui Lands, designated as] **Lot 2,** is entitled to access the common facilities, as provided for in the Option [Agreement] and Declaration[.]"  (Emphasis added.)  Moloaa Farms also contends that the Circuit Court abused its discretion in granting the Fee Motions.

After reviewing the record on appeal and the relevant legal authorities, and giving due consideration to the issues

4

raised and the arguments advanced by the parties, we resolve Moloaa Farms' contentions as follows, and vacate.

## I. The Circuit Court's Jurisdiction (Point of Error 2)

Moloaa Farms contends that the Circuit Court "lacked jurisdiction" over the Termination Motions because Respondents "failed to properly serve" Moloaa Farms as required by HRS § 658A-5. Moloaa Farms makes a conclusory three-sentence argument that does not explain how service was defective, does not specify whether it is challenging the subject matter or personal jurisdiction of the Circuit Court, and does not cite any authority other than HRS § 658A-5. See Hawaiʻi Rules of Appellate Procedure (**HRAP**) Rule 28(b)(7). Instead, Moloaa Farms merely cites to its opposition memoranda filed in the Circuit Court.

We conclude that the Circuit Court had subject matter jurisdiction over the special proceeding, and Moloaa Farms has waived any challenge to the Circuit's Court's personal jurisdiction based on any alleged defect in service. See HRAP Rule 28(b)(7); Lambert v. Waha, 137 Hawaiʻi 423, 436 n.14, 375 P.3d 202, 215 n.14 (2016) (concluding issue waived where "no discernible argument supporting this specific challenge is raised").

## II. Existence of Arbitration Agreement and Parties Thereto (Points of Error 1 and 3)

In granting the Termination Motions, the Circuit Court made two primary determinations: (1) there is no valid agreement between Moloaa Farms and each of the Respondents to arbitrate; and (2) the subject matter of the parties' dispute is not arbitrable.

In challenging these determinations, Moloaa Farms contends that Respondents waived their rights under HRS § 658A-6 to seek the court's determination as to the existence and scope of the arbitration provisions in the Option Agreement and Declaration, by agreeing to vest the arbitrator with this authority. Moloaa Farms further contends that even if the

5

Circuit Court had this authority, it erred in determining that (1) there is no valid arbitration agreement between the parties and (2) the subject matter of the dispute is not arbitrable.  As to the validity issue, Moloaa Farms argues that each of the Respondents are bound by the arbitration provision in the Option Agreement and/or Declaration as signatories of, or successors in interest to, those agreements.

The Hawai'i Supreme Court, in Haw. State Tchrs. Ass'n v. Univ. Lab'y Sch. (HSTA), 132 Hawai'i 426, 322 P.3d 966 (2014), set out the framework for addressing these issues, as follows:

> Our statutes have delineated the roles of courts and arbitrators in enforcing arbitration agreements; "[t]he court shall decide whether an agreement to arbitrate exists or a controversy is subject to an agreement to arbitrate" and "[a]n arbitrator shall decide whether a condition precedent to arbitrability has been fulfilled and whether a contract containing a valid agreement to arbitrate is enforceable."  HRS §§ 658A-6(b)-(c).  "When presented with a motion to compel arbitration, the court is limited to answering two questions:  1) whether an arbitration agreement exists between the parties; and 2) if so whether the subject matter of the dispute is arbitrable under such agreement."  Koolau[ Radiology, Inc. v. Queen's Med. Ctr.], 73 Haw. [433,] 445, 834 P.2d [1294] 1300[ (1992)].  The second prong of this rule—"whether the subject matter of the dispute lies within the arbitrator's jurisdiction"—is termed the "arbitrability" of the dispute.  Hokama v. Univ. of Haw., 92 Hawai'i 268, 274 n. 6, 990 P.2d 1150, 1156 n. 6 (1999).
>
> We have modified this general rule for cases in which the parties have agreed to leave questions of arbitrability to the arbitrator.  See Bateman Constr., Inc. v. Haitsuka Bros., Ltd., 77 Hawai'i 481, 485, 889 P.2d 58, 62 (1995) ("[T]he question of arbitrability is usually an issue to be decided by the courts, 'unless the parties clearly and unmistakably provide otherwise.'") (alterations omitted) (quoting FSC Sec. Corp. v. Freel, 14 F.3d 1310, 1312 (8th Cir. 1994)).  Where the parties have "clearly and unmistakably" reserved the issue of arbitrability for the arbitrator, courts lack the authority to rule upon this issue because "[a]fter all, 'it was the arbitrator's judgment [the parties] had bargained for, not a court's.'" Id. (alterations omitted) (quoting Morrison-Knudsen Co. v. Makahuena Corp., 66 Haw. 663, 670, 675 P.2d 760, 766 (1983)); see also Bronster v. United Public Workers, Local 646, 90 Hawai'i 9, 14-16, 975 P.2d 766, 771-73 (1999) ("[P]arties are free to agree among themselves to vest sole authority in an arbitrator to determine the issue of the arbitrability of a particular subject matter so long as they do so 'clearly and unmistakably.'" (quoting Bateman Constr., Inc., 77 Hawai'i at 485, 889 P.2d at 62)). "Parties may contractually excise the court from the determination" of whether the dispute is arbitrable and, in these cases, the court may only consider whether there is a valid agreement to arbitrate.  Bronster, 90 Hawai'i at 15, 975 P.2d at 772; see also In re United Public Workers, Local 646, 124 Hawai'i 372, 378, 244 P.3d 609, 615 (2010) ("When agreements reserve

> questions of arbitrability for the arbitrator, as they do here, the court may only consider the first prong[—whether there is a valid agreement to arbitrate].")[.]

Id. at 430−31, 322 P.3d at 970−71.

Here, under HRS § 658A-6(b) and HSTA, the Circuit Court had the authority to determine whether there was a valid agreement between Moloaa Farms and the Respondents to arbitrate. We thus address whether the Circuit Court erred in determining there was no valid agreement to arbitrate as to each of the Respondents.

## A.    Huber and C. Strong

The Option Agreement states that it was "entered into by and between MOLOAA HUI LANDS, INC. [(**MHLI**)], a Hawaii corporation ('Seller'),[4] and JEFFREY S. LINDNER [(**Lindner**)], unmarried, ('Buyer')."  (Footnote added.)  Recital A of the Agreement also identifies MHLI as "SELLER" and Lindner as "BUYER."  Recital B states that MHLI's officers, directors and stockholders are Michael R. Strong (**M. Strong**), C. Strong, and Huber, and are jointly referred to as "Principals."  Under the Agreement, Lindner agreed, among other things, to loan the "Strongs and Huber" $500,000 to fund the purchase of the Moloaa Hui Lands, with Lindner's option to acquire a portion of the property.  "Seller" agreed, among other things, to use its best efforts to subdivide or condominiumize the Moloaa Hui Lands as provided in the Agreement.  The Agreement further provided:  "The Strongs and Huber shall be personally and severally liable for the repayment of the Loan and all amounts due under the Note. The Seller shall guarantee the Note."

Under the Agreement, "THE PARTIES AGREE[D]," in Section 12.20, that "[a]ny dispute arising hereunder shall be resolved by arbitration and not by litigation."  The parties also agreed, in Section 12.17, that "[t]he rights and obligations set forth herein shall be binding upon, and shall inure to the benefit of, the Seller and Buyer and their respective heirs, estates,

---

[4]    MHLI was a developer of the Moloaa Hui Lands.  It appears that MHLI administratively dissolved in 2008.

personal representatives, successors, successors in trust and assigns."  Immediately before the signature lines, the Agreement states:  "IN WITNESS of the foregoing provisions, the parties have signed the Agreement below[.]"  (Emphasis added.)  The signatories below include "SELLER[,]" identified as MHLI, with signatures by M. Strong, "[i]ts President," Huber, "[i]ts Vice-President," and C. Strong, "[i]ts Secretary."  Below that, the signatories include "PRINCIPALS[,]" with signatures by M. Strong, "individually," C. Strong, "individually," and Huber, "individually."  Lindner signed as "BUYER[.]"

C. Strong and Huber thus signed the Option Agreement as "parties" both in their official capacities as officers of MHLI and in their individual capacities.  They agreed to and are bound by the arbitration provision of the Agreement, which is a valid agreement to arbitrate "any dispute arising [under the Agreement]."  Moloaa Farms sought to enforce the Agreement as successor in interest to Lindner under Section 12.17 of the Agreement.[5/]  See Siopes v. Kaiser Found. Health Plan, Inc., 130 Hawaiʻi 437, 453, 312 P.3d 869, 885 (2013) ("[C]ourts have recognized that 'well-established common law principles dictate that in an appropriate case a nonsignatory can enforce, or be bound by, an arbitration provision within a contract executed by other parties." (quoting Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 416–17 (4th Cir. 2000) (original brackets omitted)).  Accordingly, the Circuit Court erred in concluding there was no arbitration agreement to which Huber or C. Strong is a party, that would compel Huber or C. Strong to arbitrate disputes with Moloaa Farms.

**B.  AOAO MH I and AOAO MH II**

In March 1997, MHLI recorded the Declaration against the Moloaa Hui Lands.  The Declaration imposes certain covenants, conditions and restrictions on the land, and states that these "covenants . . . shall run with the land[,] and shall be binding upon all persons acquiring any right, title or interest in and to

---

[5/]    Moloaa Farms owns a 25% interest in Lot 2.

said Project, and shall inure to the benefit of the Declarant, any Association of Condominium Owners established pursuant to the provisions of [HRS] Chapter 514-A . . . and each future owner thereof."  Section IX of the Declaration includes an arbitration provision, which states in relevant part:  "[A]ny disputes over the meaning, intent, enforcement or interpretation of these covenants shall be resolved by binding arbitration" and that "[u]nless the parties otherwise agree in writing, the Commercial Rules of the [AAA] then in effect shall govern the course of the arbitration."

It is undisputed that AOAO MH I and AOAO MH II are Hawaiʻi Condominium Projects formed pursuant to HRS Chapter 514A, and their respective members own interests in a portion of the Moloaa Hui Lands.  By acquiring rights, title, and/or interests in land subject to the Declaration, AOAO MH I and AOAO MH II and their respective members agreed to resolve "any dispute over the meaning, intent, enforcement or interpretation of th[o]se covenants . . . by binding arbitration."  AOAO MH I and AOAO MH II are therefore bound by the arbitration provision of the Declaration, which is a valid agreement to arbitrate any disputes arising out of the interpretation or enforcement of the Declaration covenants.  Moloaa Farms sought to enforce the Declaration as an owner of Lot 2.  The Circuit Court therefore erred to the extent it concluded there was no valid and enforceable arbitration provision or agreement that would compel AOAO MHI and AOAO MHII, and their current officers in their official capacities, acting on behalf of their respective AOAOs, to arbitrate such disputes with Moloaa Farms.

## III.  **Arbitrability of the Dispute (Point of Error 4)**

We next address whether the Circuit Court erred in determining that the subject matter of the dispute on which Moloaa Farms based its arbitration demand was not arbitrable. As explained above, the supreme court has stated that where parties have "clearly and unmistakably" reserved the issue of arbitrability for the arbitrator, courts lack the authority to rule on the issue.  HSTA, 132 Hawaiʻi at 430–31, 322 P.3d at

970–71.

Moloaa Farms argues in part that the signatories (and successors in interest) to the Option Agreement and the Declaration reserved the issue of arbitrability for the arbitrator by agreeing to arbitrate covered disputes under the AAA Commercial Arbitration Rules.  In turn, Rule 7(a) of the AAA Commercial Arbitration Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim."  American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures 13 (2013), http://www.adr.org/sites/default/files/CommercialRules_Web-Final.pdf.[6]

In the absence of controlling Hawai'i authority, we look to federal case law for guidance on whether the parties have "clearly and unmistakably" reserved the issue of arbitrability for the arbitrator in these circumstances.  See Bateman Constr., Inc. v. Haitsuka Bros., Ltd., 77 Hawai'i 481, 485, 889 P.2d 58, 62 (1995) (finding that because the pertinent language of certain Hawai'i arbitration statutes was "virtually identical to the language of the federal arbitration statute . . . we review federal authority for guidance.").  Addressing this issue, the United States District Court for the District of Hawai'i has followed the Ninth Circuit's conclusion that "[v]irtually every circuit to have considered the issue has determined that incorporation of the [AAA's] arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  Marriott Ownership Resorts, Inc. v. Flynn, No. CIV. 14-00372 JMS-RLP, 2014 WL 7076827, at *8 (D. Haw. Dec. 11,

---

[6]     "Rule 1 of the 1996 AAA Rules provides 'these rules, and any amendment of them, shall apply in the form obtained at the time the demand for arbitration . . . is received by the AAA.'"  Sleepy's LLC v. Escalate, Inc., No. 10 Civ. 1626(SAS), 2010 WL 2505678, at *2, n.28 (brackets omitted and emphasis added).  Here, that means the October 1, 2013 AAA Commercial Arbitration Rules apply, which include Rule R-7.  See JSC Surgutneftegaz v. President and Fellows of Harvard Coll., 167 Fed. App'x. 266, 268 (2d Cir. 2006) (concluding that Rule 1 of the 1996 AAA Rules incorporates later AAA Rules that reflect the intent of the parties to commit the question of arbitrability to the arbitrator).

2014) (quoting <u>Oracle Am., Inc. v. Myriad Group A.G.</u>, 724 F.3d 1069, 1074 (9th Cir. 2013), and citing additional cases from the Second, Fifth, Eighth, Eleventh, and Federal circuits).

Here, the arbitration provisions in the Option Agreement and the Declaration unambiguously incorporate the AAA Commercial Arbitration Rules.  We thus conclude that the signatories (and successors in interest) to these agreements clearly and unmistakably reserved the issue of arbitrability for the arbitrator, and the Circuit Court erred in determining that issue, *i.e.*, that the subject matter of the dispute upon which Moloaa Farms bases its arbitration demand is not an arbitrable dispute as to Huber, C. Strong, AOAO MH I and AOAO MH II, and the AOAOs' current officers in their official capacities, acting on behalf of their respective AOAOs.  That issue is for the arbitrator to decide.

## IV.  Jurisdiction Over Water Rights (Point of Error 5)

Moloaa Farms challenges the Circuit Court's conclusion that the arbitration demand seeks to adjudicate a private dispute over water rights, and pursuant to HRS § 664-33,[7] the Circuit Court has exclusive jurisdiction over the dispute.  Moloaa Farms contends that the dispute "is not about water rights[,] but rather the terms and conditions upon which Lot 2 is entitled to access the common facilities, as provided for in the Option [Agreement] and Declaration[.]"  Moloaa Farms further argues that, in any event, "jurisdiction under HRS § 664-32[8] is not

---

[7]    HRS § 664-33 (2016) provides:

The circuit courts shall hear and determine all controversies respecting rights of private way and water rights, between private individuals, or between private individuals and the State.  Any person interested, or the State, may apply for the settlement of any rights involved hereunder by filing a complaint in the circuit court of the circuit in which the property affected is situated.  Thereupon the court shall issue a summons to each land owner or occupant having an interest in the controversy.  A notice of the pending action may be published in any case in the discretion of the court.

[8]    HRS § 664-32 (2016) provides:  "The circuit courts shall have jurisdiction to hear and determine, without the intervention of a jury, all controversies respecting rights of private way and water rights, as in this part provided."

11

exclusive[,] and there is nothing in the language of HRS § 664-32 that suggests the parties are precluded from waiving rights to a judicial forum . . . ."

We conclude that nothing in HRS § 664-32 or § 664-33 prohibits an AAA arbitrator from hearing the underlying dispute, if the arbitrator otherwise determines the dispute is arbitrable. In particular, this is not a controversy respecting "water rights" within the meaning of these statutes; it is a dispute concerning rights under the Option Agreement and the Declaration.[9/]  Accordingly, the Circuit Court erred in concluding that the Circuit Court has exclusive jurisdiction over the dispute pursuant to HRS § 664-33.

## VI.  Attorneys' Fees (Points of Error 6, 7, and 8)

In light of our disposition, we vacate the Fee Orders, as Respondents are no longer prevailing parties.

## VII.  Conclusion

For the reasons discussed above, we vacate the Termination Orders and the Fee Orders, and remand the case to the Circuit Court of the Fifth Circuit for further proceedings consistent with this Summary Disposition Order.  It is further ordered that the July 26, 2024 motion for retention of oral argument is denied.

DATED:  Honolulu, Hawaiʻi, August 15, 2024.

On the briefs:

Paul Alston and
Timothy H. Irons
(Dentons US LLP)
for Claimant-Appellant.

Matt A. Tsukazaki and
Tyler A. Tsukazaki
(Li & Tsukazaki, Attorneys at
Law, LLLC)
for Respondents-Appellees,

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Clyde J. Wadsworth
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

---

[9/]     We thus need not determine whether the circuit court has exclusive jurisdiction over controversies respecting water rights under HRS § 664-32 or § 664-33.

Association of Apartment
Owners of Moloaa Hui I and
Paul C. Huber, Individually
and as President of the
Association of Unit Owners of
Moloaa Hui I

John D. Zalewskei and
Michelle J. Chapman
(Case Lombardi & Pettit, A Law
Corporation)
for Respondents-Appellees,
Association of Apartment
Owners of Moloaa Hui II and
Ned Y. Whitlock, as President
of the Association of
Unit Owners of Moloaa Hui II

Jason G.F. Wong and
Michel A. Okazaki
for Respondent-Appellee,
Candace L. Strong

Carl H. Osaki
for Respondent-Appellee,
Paul C. Huber, individually